McCULLOCK *v.* DOAK and wife.

JOHN McCULLOCK *v.* JAS. W. DOAK and wife, MARTHA M. DOAK..

Evidence that the grantee in a certain deed, which is impeached for fraud, and' who afterwards conveyed the land to his step-daughter, the wife of the grantor, in consideration " of love and affection," attempted before that time, to purchase for his step daughter another house and' lot, is not admissible for the purpose of establishing that the deed to himself was *bona fide* and for a fair consideration.

The refusal of a Judge of the Superior Court to grant a new trial on the ground of newly discovered evidence is such a matter of discretion that this Court will not review it.

The judgment authorized to be set aside by the Superior Court on account of mistake, inadvertence, surprise, or excusable neglect, refers to judgments rendered at a previous term, and does not relate to what takes place at the trial term.

A charge by the Judge below, "that the deed," from the grantor to the grantee,, "would have been a sufficient defence, had not the insolvency or at least the very great indebtedness of the grantor, at the time, been established, which presumptively tainted the deed with fraud, whereby it devolved on the defendants," (claiming under the deed,) "to show affirmatively that the sale· "from the grantor to the grantee," was a fair, honest and *bona fide* transaction," when warranted by the facts, is no ground for a new trial.

(*Satterwhite* v. *Hicks*, Busb. 105, and *Reiger* v. *Davis*, 67 N. C. Rep. 185, cited and' approved.)

CIVIL ACTION, to recover possession of land, tried before *Tourgee, J.,* at the Spring Term, 1872, of GUILFORD Superior Court.

The plaintiff claimed the land in controversy, under a. sale made by the sheriff of Guilford, by virtue of certain executions, regularly issued on judgments rendered in the Superior Court of said county ; at which sale the plaintiff became the purchaser, and to whom the sheriff executed his deed according to law. The plaintiff alleged that the title to the land sold by the sheriff, and sought now to be recovered, had been in the defendant in the executions, James. W. Doak, as also one of the defendant's in this action, and that he, Doak, had conveyed the same to Jacob ¦Balsey, the step-father of Martha M. Doak, the *feme* defendant, and wife· of the other defendant, who conveyed the same for the consideration of " love and affection," to the said Martha. The

plaintiff alleged, that this transaction and the conveyances were fraudulent and void, as against the creditors of James W. Doak; and as bearing on this point, the plaintiff introduced the following evidence :

1st. That James W. Doak, on the 27th of January, 1863, sold a tract of land to one Weatherly for $5,000 cash, telling Weatherly at the time that he wanted the money to pay debts, and that he had bought a peice of land from Jacob Balsey.

2d. A deed from Balsey to the defendant, Jas. W. Doak, dated the day after the transaction with Weatherly for five acres of the land in controversy, in which deed, a consideration of $1,250, was recited and acknowledged to be paid ; and also another deed from C. P. Mendenhall to Doak, dated 23d March 1863, wherein, for the consideration of $200, acknowledged to be paid, seven acres more were conveyed, which two tracts were the lands sold by the sheriff and purchased by the plaintiff, as before stated, and is that, sought to be recovered in this action.

3d. Two deeds, executed by the defendant, Jas. W. Doak, on the 13th October, 1865, and registered on the 18th day of the same month, to said Jacob Balsey; the one for seven acres of land, in consideration of $200, and the other for five acres of land for $1,000, the same as above alluded to. And also a deed from Balsey to the *feme* defendant Martha M. Doak, purporting to be dated 4th December, 1866, but which was not registered until the 24th January, 1870, for the same land, for and in consideration of "love and affection." This deed was witnessed by one Eckle, who testified that he attested it in the office of Attorney McLean, on the day of its date, and could not say that he had ever seen the deed since that day.

4th. That the defendant, Jas. W. Doak, at the end of the war, and continuously since, was indebted to various persons in large amounts and was insolvent.

The plaintiff further showed by one Clark, that he, Clark, drew and witnessed the two deeds from Doak to Balsey, that they together applied to him to write the same one evening, requesting that the deeds should be ready by the next morning; that at the delivery of the deeds, he saw no money paid, nor bonds, nor notes given or surrendered, and there was no settlement between the parties in his presence. This witness afterwards stated, upon being introduced for the defendants, that at the time the deeds were executed, he heard Balsey say, that Doak owed him for borrowed money and for standing security more than the land was worth.

In reply to the plaintiff's evidence, the defendants introduced testimony showing that they removed from the land (the same in controversy), in the Spring of 1865, and did not again reside thereon until 1867. In the meantime, the premises were occupied by one Julian, who paid the rent of 1865 to one Jas. W. Cook, and the rent for 1866 to Balsey. The defendants, as also Jacob Balsey and his wife, testified to the following facts, to-wit: That the defendant, Jas. W. Doak, still owed Balsey a part of the purchase money for the said land, and was besides truly indebted to him in other sums amounting to more than the value of the land, giving of such indebtedness a detailed statement, and how the same was contracted; that the re-sale to Balsey was in consideration of the discharge of such indebtedness. On cross examination, the witnesseses were asked for the notes or bonds surrendered. All testified, that there were notes surrendered; and the *feme* defendant, Martha M. Doak, stated that she took them and put them away; that the mice destroyed one, and that she gave two of them to one Wm. Balsey, who asked for them, to show to her attorney, Mr. Scott. Wm. Balsey stated that he received two notes from the defendant, Martha, for the purpose of showing them to Mr. Scott; that he put them in the cash drawer in his father's store, and had never seen them since. No notes were produced on the trial.

The defendant, Jas. W. Doak, testified, that of the money received from Weatherly, he paid $550 to Jacob Balsey, and gave his note for $700, being for balance of the purchase money, which he said was one of the notes surrendered at the resale; that the balance he applied to other debts, naming them.   On his cross-examination, this defendant stated that he owed with the plaintiff, as his surety, the debt to Bilbro, which had then been assigned to Iddings, under which the land had been sold by the Sheriff; concerning this, he further stated, that hearing that Iddings would compromise the debt, he borrowed of Balsey, on the 10th October, 1865, $125, in Greensboro, and in a day or two went to see Iddings on the subject of compromising the debt against himself; that Iddings refused to compromise, and demanded gold.   That on the refusal of Iddings, he went the same day to Balsey and told him of Iddings' refusal and his demanding gold; and that he and Balsey went that same evening to the room of Mr. Clark in Greensboro, to get him to write the deeds to Balsey, which Clark was to have ready by morning, and they were ready as promised. Both Balsey and Doak, however, stated that the former refused to lend the money, alleging that he, Doak, now owed him too much, unless Doak would sell him back the land, and that then and there the land sale was agreed upon and the money loaned.   That Balsey knew nothing of Doak's intended visit to Iddings, nor the purpose for which the $125 was borrowed; that the deed was made in pursuance of the agreement between the parties at the time when the money was loaned, and that it was a *bona fide* transaction for a valuable consideration ; there was no time agreed on for a re-conveyance and no price fixed, but he had promised to let him have the land.

Defendant further offered to show by Jacob Balsey, that he, Balsey, had attempted in the Fall of 1866, to buy for his step-daughter, the *feme* defendant, a certain house and lot

in Greensboro, she then being without a house, and living in one in his, Basley's yard, and to prevent her and her husband, the other defendant, removing to Florida. The Court excluded this evidence, and the defendants excepted. Subsequently in the course of the trial, Mrs. Balsey was allowed, without objection, to state the fact, which was not disputed.

On the part of the plaintiff, among other things, it was contended that the deed was executed with the intent to hinder and defeat the debt of Iddings, and that this intent was known to and participated in by Balsey, and thereby the same was void as against the creditors of Doak, whatever the jury might infer as to the consideration being valuable. On this point His Honor charged the jury that if they believed that Doak made the deed to Balsey, with the intent thereby to hinder and defeat the debt due Iddings, and that such intent was known to and participated in by Balsey, the deed was, in law, fraudulent and void as against the creditors of Doak.

The jury returned a verdict for the plaintiff. The defendants moved a new trial, and to sustain the motion filed affidavits, the substance of which is set out in the conclusions of his Honor refusing the motion, and which are also sufficiently stated in the opinion of this Court.

The defendants then moved to vacate the judgment, for the reason, 1st, That his Honor instructed the jury that the defendant, Doak, testified that upon his return from the house of Iddings, on the day that Clark wrote the deeds from him to Balsey, and just before their going to Clark's, he, Doak, communicated to Balsey the fact that Iddings had refused to accept a compromise of his debt. Whereas, the fact was, that Doak did not so inform Balsey, and if he was so understood to testify, it was a mistake on the part of the Court and counsel for the plaintiff, or an inadvertence on

the part of the witness, Doak, in so expressing himself as to be thus misunderstood.

2. That since the trial, new testimony has come to the knowledge of the defendants, to the effect that Balsey, prior to the execution of the deed by Doak to him in 1865, told one Kersey of Doak's indebtedness to him, that he, Doak, had not paid for the lot in question, and that he should be compelled to take the same back to secure himself.

This motion his Honor refused, and the defendants appealed.

*Scales & Scales* and *Scott*, for the appellants.
*Dillard, Gilmer & Smith* and *Ball & Keogh*, contra.

Boyden, J. The first question raised in this case is as to the competency of the testimony of the witness Balsey, " that he tried to buy a house and lot for his step-daughter before he made a deed to her." This testimony was excluded by his Honor, and we think correctly, as it could have no tendency whatever to prove that the conveyances from Doak to Balsey were *bona fide,* or for a fair consideration. But had his Honor been in error in excluding this evidence of the witness, Balsey, the error was cured, by admitting the same proof by Mrs. Balsey, which evidence was admitted to be *true,* as the case states.

The question for a new trial on the ground of newly discovered testimony, was one of discretion for his Honor and cannot be reviewed in this Court. This is too well settled to require the citation of authority. As to the question of excusable neglect, as provided for in sec. 133 C. C. P., that section has no application. That provides for setting aside a judgment rendered at a previous term, and has no reference as to what the judge may do at the trial term; as there is no judgment rendered until all the questions raised at the term have been decided. We are at a loss to understand

how it could be supposed, that sec. 133 of ℃. C. P. could be construed to warrant the course of the defendant's counsel in this case.

The remaining question is as to the charge of his Honor, to which defendants excepted. The instruction excepted to was as follows: " That the deed from Doak to Balsey would have been a sufficient defence had not the insolvency, or at least very great indebtedness of Doak at the time of the conveyance, been established, which presumptively tainted the deed with fraud, whereby it devolved upon the defendants to show affirmatively that the resale from Doak to Balsey was a fair, honest, *bona fide* transaction." In this instruction we understand his Honor as informing the jury substantially, that the case as made by the plaintiff's evidence would raise a presumption of fraud and devolve upon the defendants the burden of showing that in fact the transaction was fair, honest and *bona fide*, and that the question of the *bona fides* was a question for the jury upon the consideration of all the testimony in the cause.

Viewed in this light, and we can regard it in no other, the instruction was well warranted by the cases of *Satterwhite* v. *Hicks*, Busb. 105, and *Reiger v. Davis* 67 N. C. Rep. 185.

There is no error.

This will be certified.

PER CURIAM. Judgment affirmed.