JOHN A. GILMER, Exec'r of J. A. GILMER *v.* NANCY McNAIRY.

In a suit on a bond, alleged to be due the plaintiff's testator, who died in 1863, which bond was given in 1858, and was executed at the request of the testator, in renewal of an older bond of date some ten years previous, both of which bonds, it was claimed by defendant, were given as vouchers or receipts for money due her from the estate of her husband, of which the plaintiff's testator was executor: *It was held,* that although the defendant could not testify directly as to any conversation or understanding she had with the plaintiff's testator at the time of the execution of the first bond, concerning its use, it was competent for her to relate that conversation in her evidence as to what was said and what took place between herself and the agent of said testator at the time of the execution of the other, or second bond—the one in suit.

Direct evidence of a conversation and understanding with the plaintiff's testator is, under section 343, Code of Civil Procedure, incompetent; a rehearsal of that conversation, however, in a conversation with an agent of such testator is competent, as a part of the *resgestœ.*

CIVIL ACTION, tried at Spring Term, 1873, of the Superior Court of GUILFORD county, before his Honor, *Tourgee, J.*

Plaintiff declared on a bond for $998.98, given by defendant to plaintiff's testator, on 25th January, 1858, due 1st March, 1858.

The defendant in her answer alleged as a defense to the action, that the testator of the plaintiff and one Hunt were executors of the will of James McNairy, deceased, her late husband, whose estate she averred was large, and of which she was entitled as one of the distributees. That the bond

sued on was given for the aggregate of the principal and interest of a bond given by her to the testator of the plaintiff, some ten years before that, for money paid her by Mr. Gilmer, the said testator, in part of her distributive share in the estate, and was intended only as a receipt or voucher on the final settlement.

It was admitted on the trial that James McNairy died in Guilford county, in 1840, leaving a last will and testament, which was duly admitted to probate, and ihat the said Gilmer and said Hunt qualified as executors thereof. It was also admitted that the defendant, the widow of said James McNairy, dissented from the said will, and that such dissent duly appeared of record. The inventory and account of sales returned by McNairy's executors were also in evidence, by which it appeared that the estate coming into the hands of the executors in Guilford county, amounted to upwards of $8000, and further showing that the widow, the defendant, had purchased at the sale had by said executors, articles to the amount of $490.

The defendant was herself examined, and proved that the bond sued on was given for the aggregate of principal and interest of another bond, surrendered to her at the time of the execution of the bond in suit, and that this transaction of the calculation of the interest on the old bond and the execution of the one in suit was had with Charles E. Shober, who was the agent of the plaintiff's testator for that purpose.

She further stated, the same being objected to by the plaintiff, that she had received a letter from Mr. Gilmer while he was in Congress, which letter she had lost, directing her to go to Shober and renew her bond, and she accordingly did so as above stated.

When she went to Mr. Shober, who had lost his wife only a few days before, and who was very much distressed thereby, he produced the old bond and began to calculate the interest; then she objected to paying the interest on the

same for the reason, as stated to him, that the first or old bond was taken as a voucher for a portion of her distributive share paid her by Mr. Gilmer, and that said bond was held by Mr. Gilmer to be used as a receipt or voucher for so much of her distributive share in her husband's estate on a final settlement, and was not a debt to Mr. Gilmer. That she told Shober that the money she received on the old bond was received as a portion of her interest in her husband's estate, and that it was so understood and intended by Mr. Gilmer, and that there was still other moneys due her from said estate in the hands of Mr. Gilmer. The plaintiff's objection to this testimony was overruled by the Court. It was allowed, and the plaintiff excepted.

The defendant further testified that Shober admitted that there was more money due her, and told her that suit was pending in Tennessee to recover for the estate other moneys still, and that Gov. Brown was counsel for the executors in Tennessee, and requested her to execute the bond with the interest included, as her money, he stated, was drawing interest, and it would all be the same to her. That she could use this bond—the bond in suit—as a voucher or receipt on the final settlement; that it was upon this understanding and assurance that she executed the bond now in suit, and that she stated to Shober, in the course of the conversation in regard to the execution of the bond, that the amount expressed in the old bond, which was about $600, was all she had ever received from the estate of her late husband. She further stated that she never had received any money from the other executor, Hunt.

The plaintiff objected to the witness giving the conversation between herself and Shober at the time of the execution of the bond sued on upon, the same principle which would exclude evidence of any transaction or communication between the witness and Mr. Gilmer, the plaintiff's

22

testator. The objection was overruled and the plaintiff excepted.

On her cross-examination the defendant proved that the testator of the plaintiff and the said Hunt qualified as executors to the will of her husband in 1840, and that before the bond sued on in this action was executed all the other distributees, nine in number, had received their respective shares of the estate, and had removed; that Hunt the co-executor had also removed from the State and that he is still alive; that she had always resided in Guilford county, in which county the plaintiff's testator resided; that she had never sued for her distributive share, and had not demanded any account or settlement with Mr. Gilmer after the date of the bond sued upon, up to Mr. G's death, which took place in 1868.

The defendant also proved by Milton Hunt, co-executor of her said husband with plaintiff's testator, that the said testator, Mr. Gilmer, had received some $18,000 from Tennessee belonging to the estate of her said husband, at different times, from 1841 to 1848; that Mr. Gilmer had told him (the witness) so, himself; that he (Hunt) had removed from this State in the Spring of 1848, and has no knowledge as to how the estate of their testator was administered by his co-executor. This witness in his deposition, in answer to questions as to how the estate was distributed and by whom, further testified that he did not recollect how the distribution was made, but that it was made by Mr. Gilmer; he does not know that the defendant ever received any part of her distributive share of the estate from Mr. Gilmer; that he, himself, never paid her anything to his recollection, having no receipts or vouchers showing such payment; that there were ten distributees, including the defendant, and he does not know the amount received by any of them, there never being any final settlement of the estate to his knowledge.

On cross-examination by plaintiff, this witness (Hunt)

testified that some time between 1850 and 1860, Mr. Gilmer, his co-executor, caused a suit to be brought in the State of Tennessee against the estate of the late Judge McNairy, which brought about a settlement in that State from which B. Y. McNairy, P. J. McNairy, J. C. McNairy, William McNairy and the witness' wife, Mary J. Hunt, who were distributees of the said James McNairy, received $400 apiece.

In answer the plaintiff introduced Charles E. Shober, who testified that he was an agent of Mr. Gilmer, plaintiff's testator, at the time he took the bond, the subject of the suit, and that he took said bond as such agent. That the defendant came to his house in Greensboro, and that the bond was taken at his house; that as to the particulars of the transaction he has no distinct recollection. That the bond in suit is the aggregate amount of another bond (principal and interest) surrendered to the defendant on the day of the date thereof, that he did not know what the first bond was for, nor with what intent executed, and does not remember the particulars of the conversation of the defendant and himself at the time the bond was executed.

The plaintiff asked his Honor to charge the jury that the lapse of time under the circumstances in this case deposed to would prevent or defeat a bill in equity for an account, and the claim of the defendant as set up in this action; the lapse of time affords the presumption of satisfaction or abandonment and equally defeats the ascertainment and set off of her distribution share. The Court declined so to charge, but charged the jury that if they should find that the bond sued upon was executed in part of the defendant's distributive share, and intended to be used as a voucher or receipt on final settlements, they should find for the defendant; otherwise for the plaintiff.

There was a verdict and judgment for defendant.

Plaintiff moved for a new trial, for

1st. Because of the admission of the declaration of the

defendant to Shober, as deposed to by her, as showing for what purpose and to what intent the original bond was given.

2d. Because the Court did not charge as requested as to the lapse of time.

3d. Because of the charge as given.

Motion overruled, and appeal by plaintiff.

*Dilliard* and *Battle & Son*, for appellant:

1. Gilmer being dead, defendant was not competent witness to prove under sec. 343 C. C. P., "the transactions" between her and Gilmer in relation to execution of the bonds—what they were for and how to be used. *Whitesides* v. *Green's* Administrator, 64 N. C. Rep. 307; *Peoples* v. *Maxwell*, Ibid, 313.

2. Shober's agency to take the bond sued on (Gilmer being absent) does not help the matter; because it is to be inferred, and his testimony is, that he knew nothing about the transaction attending the execution of the bond for which this was a revival; and those transactions are the grounds of defense.

3. By letting her testify as to what she said to Shober about the understanding with which the old bond was given, she is permitted to prove by her own declarations, transactions with the deceased, of which Shober knew nothing. This is against the intent of sec. 343 C. C. P.; *Peoples* v. *Maxwell*, supra.

4. McNairy, husband of defendant and testator of Gilmer, deceased, died in 1840. Other nine distributees after having received their shares of the estate, moved away in 1848, the year in which the old bond was given. Though statutes of limitation and presumption of payment do not ordinarily apply to claims for distributive shares, being matter of equitable cognizance, yet equity adopts the analogies of the the law in such cases as this, and presumes payment, satis-

faction or abandonment of distributive share. *Falls* v. ——, 4 Hawks 421; *Ivey et ux.* v. *Rogers*, 1 Dev. Eq. 58. That the bond of 1848 affords presumption of settlement or satisfaction of matter between the parties. See *Petty* v. ——, 1 Dev. Eq. 191.

If Gilmer had given defendant his bond for her share of the estate in 1848 its payment would have been presumed by lapse of ten years. The facts of this case and great lapse of time make a state of things on which equity would not entertain a bill by defendant for injunction to set off distributive share, or for an account. See authorities above cited.

5. If satisfaction or abandonment would be presumed, then defendant would not be allowed, as in *Albright* v. *Albright*, 67 N. C. Rep., to rebut that presumption by her own oath, as against Gilmer, deceased. If she cannot testify to transactions with him, she cannot say there was no transaction when the law presumes one, and he is not here to deny what she says. The principle of sec. 343 C. C. P. is mutuality.

6. If, as we insist, the defendant's testimony was incompetent on the points noticed, it was error in the Judge to charge that "if the bond sued on was in part of distributive share of defendant, and intended to be used as a receipt or voucher, they should find for defendant, because, 1st. There was no other evidence as to the purpose of the bond. &c. 2d. If the evidence was competent, it should have been referred for an account, to ascertain what defendant's share was. 3d. Her share could not be ascertained without Milton Hunt, Gilmer's executor of McNairy being a party. *State* v. *Johnston*, 1 Ired. 381; *State* v. *Britton*, 11 Ired. 110; *State* v. *Moore*, Ibid. 160.

7. To prevent multiplicity of action, an account should have been taken in this case; because if an account in an action for settlement should now be ordered, and it should

turn out that defendant's share was less than the amount of the bond, plaintiff under judgment here would lose the excess.

8. *Hence* the judgment here " on the merits," going beyond the verdict, improperly and erroneously precludes plaintiff from ever recovering such excess.

9. It was error to leave it to the jury to find, without an account, that there was a distributive share large enough to pay the bond. *McLean* v. *Leach*, 68 N. C. Rep. 95.

*Scott*, contra, submitted :

1. The contents of the letter from Mr. Gilmer may be proved by Mrs. McNairy, the defendant, under section 343 C. C. P., *Williston* v. *Williston*, 41 Barb. 635. "This section," (New York Code, sec. 399) " was not intended to apply to testimony resting in papers or documents. It is only applicable to personal intercourse, conversations and communications had personally with the deceased."

2. Mrs. McNairy, the defendant and witness, stated as *a fact* that the first or old bond was taken as a voucher for a portion of her distributive share paid to her by Mr. Gilmer, to be used as a receipt or voucher for so much of her distributive share in her husband's estate on a final settlement, and was not a debt due Mr. Gilmer.

3. Shober was Gilmer's agent for the express purpose of taking the bond now in suit, and from what appears from the evidence, had at that time knowledge of the business, but no objection was made on the ground of want of knowledge in Shober, but only upon the ground before stated. The defendant further testified that Shober admitted that there was more money then due her, and told her that suit was pending in Tennessee to recover for the estate other moneys still, and that Gov. Brown was counsel, &c.; that Shober requested her to execute the bond with interest in-

cluded, as her money, according to his statement, was drawing interest, &c.; that she could use this bond, the one in suit, as a voucher or receipt on the final settlement; that it was upon this understanding and agreement that she executed the bond now in suit.

4. Defendant further testified that the amount expressed in the old bond, which was about $600, was all she had ever received from her husband's estate. She does not say that the other distributees had been paid off, but that she had not.

As to the second exception, refusal of the Court to charge as requested, in regard to lapse of time :

1. The bond now in suit was given in 1858. The estate was not then fully settled. Suit in Tenn. in 1860, and estate not then settled. Mr. Gilmer died in 1868. There has never been any final settlement. All statutes of limitations and presumptions, &c., suspended from May, 1861, until January, 1870. Acts 1862–'63, chap. 34; also 1866, chap. 50; *Platte* v. *W. N. C. R. R. Co.*, 65 N. C. Rep. 74 ; Act 1867, chap. 17, sec. 8. Laches no greater on defendant's part than on the part of Mr. Gilmer.

As to third exception :

1. Plaintiff offers no proof and produces no receipt or vouchers from defendant showing any payment to her of her share of the estate, or any part thereof.

2. Hunt, Gilmer's co-executor, does not know of any payment to defendant. He himself never paid her anything.

3. The suit in Tennessee was brought by the executors in their own names, and not by the distributees or next of kin, as Judge McNairy died before James McNairy.

Exclusive of the statements made by defendant to Shober, there is still enough in the case—*facts* proved by defendant and the admissions of Shober—to warrant the verdict and judgment given.

PEARSON, C. J. The case turns upon questions of evidence.

For if the evidence objected to was competent, there is manifestly no error in the charge; and if the evidence ought not to have been received, the plaintiff was entitled to the instruction asked for, so that was simply presenting the same points in a different way, and his Honor committed no error in putting the case to the jury upon the evidence which he had ruled to be competent.

1. Mrs. McNairy's statement that she called upon Colonel Shober " in consequence of a letter received from Mr. Gilmer while in Congress, directing her to do so, and to renew her bond " was immaterial, and if anything was in favor of the plaintiff; so he has no right to complain.   That fact was calculated to impress the jury in favor of the plaintiff, for if the bond was to be treated merely as a *voucher*, why have it renewed ?   This question can only be explained by the fact that on the part of the plaintiff there was no evidence that the estate had been settled, no vouchers, &c., which in the management of a large estate was certainly a very loose way of doing business; and to allow one side to rely upon *a bond*, and cut off the other side by a presumption from lapse of time so as to exclude an account, would seem to violate the maxim, " no one shall take advantage of his own wrong."

2. The objection that Mrs. McNairy ought not to have been allowed to testify as to what she told Colonel Shober at the time she renewed the bond in reference to the understanding between her and Mr. Gilmer in regard to the first bond, is a question of much more difficulty.

Mr. Gilmer being dead, Mrs. McNairy could not have testified directly as to the conversation and understanding between Mr. Gilmer and herself.   Sec. 343 C. C. P.

But after some hesitation, we are of opinion that it was competent for her to testify as to what she said to Colonel Shober at the time she executed the bond sued on.

1. It was a part of " the *res gestæ*."

2. Colonel Shober is living, and could have contradicted her, which he failed to do, although called as a witness.

Assume it to be a fact that Mrs. McNairy, when she executed the bond, told Colonel Shober that there was the understanding between Mr. Gilmer and herself above set out. The legal effect of this assertion, to the agent of Mr. Gilmer, presented a question about which no instruction was asked, and which would have been difficult of solution. Direct evidence of Mrs. McNairy as to the conversation with Mr. Gilmer is incompetent—but her rehearsal of that conversation to Colonel Shober is competent. This is one of the novelties resulting from the recent changes of the law of evidence. Her telling Colonel Shober that she had held a certain conversation with Mr. Gilmer is *per se* no evidence of the fact, for we only have her word for it. But taken in connection with the other evidence and the circumstances of the case, we are inclined to the opinion that there was evidence fit to be left to a jury as to the allegation that this bond was to be subject to a credit or set off by reason of the amount, she was entitled to for her distributive share on final settlement of the estate of her husband.

Mrs. McNairy's rehearsal to Colonel Shober when she executed the bond sued on, of the conversation with Mr. Gilmer when she executed the first bond *per se*, amounts to nothing—it is bare assertion ; but connect it with the fact that Colonel Shober was the agent of Mr. Gilmer in procuring the execution of the bond. Notice to an agent is notice to the principal. So Mr. Gilmer had notice that this good lady did not consider the bond in any other light than as a receipt or voucher to be used as a credit or set off on final settlement—connect it with the fact that notwithstanding such notice, Mr. Gilmer allows the note to stand over until after his death, and connect it with the further fact that there never has been a *final* settlement of the estate of the defendant's husband. This tends to account for the fact that

the note was permitted to lie over, and we see no error in the ruling of his Honor, and believe the verdict meets the merits of the case.

Had the plaintiff allowed the counter claim and asked a reference to fix the amount, justice probably would have been better administered, but he chose to stand on the law, and having taken his chances before a jury, must abide by the result.

No error.   Affirmed.

PER CURIAM.                    Judgment affirmed.