TREDWELL, Mallory & King v. A. W. GRAHAM and others.

*Evidence—Section 343—Deed—Fraud, evidence in.*

1. A party's declarations and admissions pertinent to the issue are evidence against him, and if made in the presence and at the instance of others having a like interest with him, they are evidence against them.

2. Notwithstanding the statute, section 343 of the Code, one may testify to a transaction by the opposite party, when against his own interest. And though direct evidence of a conversation with a person deceased be incompetent, a rehearsal of the same in a conversation with a son of the

TREDWELL v. GRAHAM.

deceased is competent under the facts of this case, as part of the *res gestœ.*

3. A deed made by an insolvent father to his son, in the presence of another son, nothing else appearing, is presumed to be fraudulent as to creditors. The burden to remove this presumption rests upon him who seeks to uphold the conveyance. A grantee in such case may protect his title by showing that he is a purchaser for value and without notice of the grantor's fraudulent intent.

(*Weinstein* v. *Patrick* 75 N. C., 344; *Gilmer* v. *McNairy*, 69 N. C., 335; *Satterwhite* v. *Hicks*, Busb., 105; *Reiger* v. *Davis*, 67 N. C., 185; *Hawkins* v. *Alston*, 4 Ired. Eq., 137; *Claywell* v. *McGinsey*, 4 Dev., 89; *Griffin* v. *Tripp*, 8 Jones, 64; *Cansler* v. *Cobb*, 77 N. C., 30, cited and approved).

CIVIL ACTION tried at Spring Term, 1883, of DURHAM Superior Court, before *Gilmer, J.*

Verdict and judgment for defendants; appeal by plaintiffs.

*Mr. W. W. Fuller,* for plaintiffs.
*Mr. J. W. Graham,* for defendants.

RUFFIN, J. This action is brought for the recovery of the possession of land.

The plaintiffs, Tredwell, Mallory & King, are partners, and claim title under two deeds—the one from Rufus Bobbitt to his son William A., dated October 14th, 1879, and the other from the said William A. to themselves, dated July 31st, 1880.

The defendant, Graham, claims by virtue of a purchase at execution sale made in March, 1880, under judgments obtained against the said Rufus Bobbitt in Granville county, and docketed in Orange county on the 8th day of November, 1879.

The execution of the several deeds introduced was not denied, but the case was made to turn upon the *bona fides* of the deed from Rufus Bobbitt to his said son, there being evidence offered going to show his insolvency at the time of its execution.

The only issues submitted were: 1. Was the deed of Rufus Bobbitt to W. A. Bobbitt fraudulent? which was responded to by the jury in the affirmative. 2. Did the plaintiffs have notice

27

of such fraud before taking their deed from W. A. Bobbitt? which was answered in the negative.

The case is brought to this court upon the following exceptions taken for the plaintiffs:

1. The deposition of W. S. Mallory, who is a member of the firm, and a plaintiff in the action, had been taken at the instance of the plaintiffs, and in response to a question propounded by them, the defendants not being present either in person or by an attorney, he had stated that his firm had a considerable claim upon Rufus Bobbitt and his son William A., and learning that they were largely involved, he was sent, in the summer of 1880, to see them in regard to it; that he found the father at home, who informed him of his inability to pay this and his other debts, but expressed a wish, growing out of the kindness hitherto shown him by the plaintiffs, to secure them in any way that he could; that his property, meaning that in dispute, stood in the name of his son William A., who was then in Virginia, but that he would give the witness a letter to take to him, instructing him to give the plaintiffs a deed for the land; that thereupon, at the request of the said Rufus, the witness wrote a deed purporting to convey the land from the son William A. to the plaintiffs, using as a form the deed which the said Rufus then had in his possession, dated the 14th October, 1879, and by which the land was attempted to be conveyed to his said son; that the witness then took the deed so prepared, together with a letter from the father, to Virginia, where the same was executed by the son. Other matters were referred to in the deposition, and in reading it to the jury the plaintiffs read only such portions as related to the same, and omitted that part which had reference to the interview between the witness and the elder Bobbitt. The defendant then offered to read that part of the deposition, and was permitted to do so, though objection was made by the plaintiffs and though it was shown that Rufus Bobbitt had died before it had been taken, and to this the plaintiffs excepted.

The court can perceive no ground upon which this exception

can be sustained.   Conceding that it was proper for the plain-
tiffs to omit reading this portion of the deposition, and regard-
ing only the question as to the competency of the testimony as
offered by the defendant, it does not seem possible to doubt the
correctness of His Honor's ruling with regard to it.   A party's
own declarations and admissions, if pertinent, are always evi-
dence against him, without regard to their subject matter, and if
made in the presence and at the instance of others having a like
interest with himself, they are likewise evidence against them;
and the fact that they were put in the form of sworn answers to
interrogatories can neither lessen their weight nor affect the ques-
tion of their admissibility.   Nor does the case come under
section 343 of the Code, so as to be excluded as being a transac-
tion with a deceased person.   As is said in *Weinstein* v. *Patrick,*
75 N. C., 344, notwithstanding that statute, a party may be
called to testify touching such a transaction by the opposite party
and when against his own interest, and if this be so, then his
declarations under similar circumstances may be used against
him.   Why should it not be so? since in such a case it is
impossible that the mischief can occur, which it is the policy
of the statute to avoid.   The plaintiffs, speaking through their
partner (Mallory), may well be trusted to testify as to a transac-
tion with their deceased assignor, as they stand in his shoes; and
their interests, derived from him, the law deems, independently
of any statutory restraints, to be a sufficient guaranty of their
truth.

2. The defendant introduced the plaintiff, W. A. Bobbitt, as
a witness, and he was allowed to testify, and did testify, though
objection was made by the plaintiffs, that when the plaintiff
(Mallory) came to Virginia in 1880, he told the witness that
Rufus Bobbitt (the father) said that the land in controversy had
been sold by the sheriff and purchased by the defendant, and
that the mortgage which the plaintiffs then held was not secure;
that the land had better be secured by a deed, and that he (Mal-
lory) did not regard his mortgage as secure, but thought a direct

conveyance would be safer. This exception is the same in substance with the first, and seems to be fully answered by what is said with regard to it. It falls, too, directly within the principle declared in *Gilmer* v. *McNairy*, 69 N. C., 335. It was there held, that though direct evidence of a conversation or understanding with a party deceased might be incompetent under the statute, a rehearsal of the same in a conversation with an agent of the deceased was competent, as constituting a part of the *res gestœ*.

3. The same witness (Bobbitt) had shown to him the deed from his father to himself, purporting to convey the land in controversy, and, upon being asked whether he had ever seen it before, testified that he never had, and that all he had ever heard of it came from the plaintiff (Mallory) during their interview in Virginia. He was also asked, in whose handwriting the deed was, and whether it had been written in his presence and at his request and knowledge, and in reply, testified that the handwriting was that of his brother, one R. H. Bobbitt, who was also the subscribing witness, and that the same had been written without his knowledge or directions. Conceding that the execution of the deed was a *transaction* between the witness and his deceased father, and that the evidence so far as it tended to disprove this fact was inadmissible, still the court cannot see that any such prejudice resulted to the plaintiffs from its reception, as to require the verdict to be set aside on account thereof. The case states expressly that the execution of the deed was admitted upon the trial, and furthermore, the only issues submitted, or which were asked to be submitted, had reference solely to the intent with which it had been *executed*, and the knowledge which the other plaintiffs had of that intent, in case it were found by the jury to have been fraudulent. The answer of the defendants, their admissions at the trial, the very frame of the issues, and the verdict itself, all concur in recognizing the execution of this instrument as an admitted fact, and this admission necessarily carries with it a concession as to the sufficiency of its

delivery. The most, therefore, that could be said against the evidence complained of is, that it was irrelevant and wholly immaterial, but, so far as can be seen, harmless; and the same remark applies to the instruction asked for by the plaintiffs, and which was given as asked upon the point as to its delivery.

4. The plaintiffs requested the court to instruct the jury that in order to vitiate and render void the transaction, the grantee must be a party to the corrupt intent of the maker of the deed, or have some knowledge of such intent at the time of its execution, and that the deed being *prima facie* good for all purposes, it devolved upon the defendants to remove the presumption in its favor. His Honor, without referring to the special instructions asked, told the jury that the burden of proving the fraud was upon the defendants, but when it appeared that a deed had been made by an insolvent father to a son in the presence of another son, and nothing else appearing, the transaction was viewed with suspicion, and in law was presumed to be fraudulent as to creditors; and in such case the burden was shifted, and it rested with the plaintiffs to overcome that presumption of the law, and it was for the jury to say whether they had done so.

The instructions given seem to be fully warranted by the authorities and the circumstances of the case. In *Satterwhite* v. *Hicks*, Busb., 105, and in *Reiger* v. *Davis*, 67 N. C., 185, it is said to be a rule of law to be laid down by the court, that when a debtor, much embarrassed, conveys his property to a near relative, and the transaction is a secret one, conducted only in the presence of near relatives, it is to be regarded as fraudulent; and this seems to be but a fair deduction from what is said in *Hawkins* v. *Alston*, 4 Ired. Eq., 137, which has so often been cited by the courts; and especially must this be true in a case like the present, in which not only the father but the son also was insolvent, and there was not the least effort made to show that the consideration recited in the deed was ever in fact paid, or was intended to be paid. The deed itself, though evidence conclusive as to all matters between the parties, furnishes no evidence of the truth

of the matters contained in its recitals, as against strangers: for as to them, it is strictly *res inter alios acta.* *Claywell* v. *McGinsey,* 4 Dev., 89; *Griffin* v. *Tripp,* 8 Jones, 64. If voluntary, the law pronounces it fraudulent as to creditors, and he who took it must have had notice of that fact. ˙As said by PEARSON, C. J., in *Cansler* v. *Cobb,* 77 N. C., 30, when a grantor executes a deed with intent to defraud his creditors, the grantee can only protect his title by showing that he is a purchaser for a valuable consideration, and without notice of the fraudulent intent on the part of his grantor. Bat. Rev., ch. 50, § 4.

The conclusion of this court, therefore, is that there is no error in the judgment of the court below, and the same is affirmed.

No error.                                                Affirmed.