ALBERT CANNON and others v. GEORGE W. YOUNG.

*Contract for land purchase, assignment of interest in—Fraud and fraudulent conveyances.*

1. One who holds a bond for title to land has the right to assign a part interest therein to another, and such assignment conveys an equitable interest which is a sufficient consideration in law to support a deed.

2. An assignee under a fraudulent deed is not affected by it unless it be shown that he co-operated in the making thereof, or took with notice of the intended fraud.

3. There is no presumption of the law, arising from the known insolvency of the maker of such deed, that the assignee knew of his intent to defraud creditors.

(*Leadman* v. *Harris*, 3 Dev., 144; *Hafner* v. *Irwin*, 1 Ired., 490; *Lassiter* v. *Davis*, 64 N. C., 498; *Reiger* v. *Davis*, 67 N. C., 185; *Rencher* v. *Wynne*, 86 N. C., 268; *Tredwell* v. *Graham*, 88 N. C., 208, cited and approved).

EJECTMENT tried at Fall Term, 1883, of TRANSYLVANIA Superior Court, before *Gudger, J.*

The plaintiffs appealed.

*Mr. Armistead Jones*, for plaintiffs.
*Mr. J. H. Merrimon*, for defendant.

SMITH, C. J. The parties to the action derive title to the land in controversy from the same source, claiming under one Joshua Orr, the former owner—the plaintiffs, by virtue of a sale under execution issued upon a judgment recovered by them as executors of Hugh Johnson, on September 9th, 1868, and docketed in the superior court of Transylvania; the defendant, under a deed executed by said Orr to him on September 10th, 1878.

It must be assumed that the defendant's title was acquired under a deed made prior to the lien of the plaintiffs' judgment, and must prevail unless successfully impeached for fraud, and this was the issue tried by the jury in the court below.

The errors assigned and shown in the record are to the refusal of the judge to give three of the six instructions he was asked to give to the jury, numbered in the series one, two and four, and to the consideration of these only will our attention be directed:

1. The court was requested to charge that the partial assignment is not an assignment of the title bond held by the defendant entitling the assignee to sue thereon, and, conveying no interest, is void in law.

The evidence to which this instruction is supposed to be pertinent is in substance as follows: The defendant, examined on his own behalf, testified that Joshua Orr, his father-in-law, on June 4th, 1878, proposed to sell him the lots claimed in the suit, and that between the 12th and 15th days of that month he contracted to purchase them, and was directed by Orr to have the papers prepared very soon; that Orr was then indebted to witness for money advanced for him on the tract of land bought by them jointly from one Clayton, and for which the latter had executed title bond, and that the consideration of the deed from Orr to the defendant was the discharge of this indebtedness; that witness assigned one-third interest in the title bond to Orr, but did not make him a deed for the land mentioned in the bond, for the reason that no conveyance from Clayton had been made to him, a small portion of the purchase money being yet unpaid.

This evidence does not warrant the charge requested, for an equitable interest was transferred by the assignment of the bond in the land to which it related, commensurate in extent. This was a consideration in law sufficient to sustain the sale of the land in dispute, and its inadequacy in value, if shown (and we have no information upon the point), was a matter to be considered and weighed by the jury in passing upon the *bona fides* of the transaction.

2. The second instruction refused was, in substance, that the effect of the investment of the property of Orr in the title bond, while the purchase money had not all been paid, was to cover up and place it beyond the reach of executions sued out by creditors,

and that the defendant in participating in it is affected with knowledge of this effect and of Orr's intent.

The language employed is not very perspicuous, and we may fail to apprehend its precise import.

The proposition expressed seems to impute fraud in the view of the law, in a sale or assignment of property by a debtor where the consideration received consists in money or in some other form, which is inaccessible to execution, if the debtor reserve none, and is himself insolvent, and that one dealing with him shares in this fraudulent purpose.

The effect of every assignment of property liable to execution, in exchange for such as is not so liable, by an insolvent debtor, is to this extent an obstruction in the way of enforcing payment of the debts under final process. But the conveyance is not for this reason inoperative against creditors. If so, the insolvent debtor could be rendered incapable of disposing of his visible estate for the most laudable purpose, or of converting it into a different fund. There are circumstances to be considered by the jury in arriving at the debtor's intent, but they do not themselves constitute fraud to be declared to the jury as the judgment of the law upon them. There must be in the mind of the debtor, prompting to the making of the deed, a purpose to place his property beyond the reach of his creditors by this means, and thus hinder, delay or defraud them, to vitiate and annul the conveyance. An assignment to secure or to pay a *bona fide* debt would be rendered ineffectual by the presence in the consideration of this infectious element, or where it is a moving cause for the making the assignment; and in this there must be the co-operating agency of the assignee, or his assent with notice of the intended fraud. *Leadman* v. *Harris*, 3 Dev., 144; *Hafner* v. *Irwin*, 1 Ired., 490; *Lassiter* v. *Davis*, 64 N. C., 498; *Reiger* v. *Davis*, 67 N. C., 185; *Rencher* v. *Wynne*, 86 N. C., 268; *Tredwell* v. *Graham*, 88 N. C., 208.

3. The fourth instruction refused is to the effect that if the defendant, when he accepted the deed, knew, or had reason to

believe, that Orr possessed no other property liable to seizure under execution or to be applied to the satisfaction of his debts to the plaintiffs, then he is presumed to know of the insolvency of Orr and of his purpose to hinder, delay and defraud his creditors in executing the deed.

This exception has been sufficiently answered in what has been already said in reference to the intent of Orr in the transaction. If no fraud is imputed to him, none can be to the defendant. If the purpose of Orr was, and the jury should so find, to use the instrument as a means of escaping from the payment of his debts, or to delay their enforcement, or to secure some benefit to himself which the law forbids, it does not follow from his insolvency that the defendant knew of such intent, or contributed to giving it effect. A purchase from an insolvent is as effectual as from a solvent assignor, when the transaction is not tinctured with illegality or fraud, and the one has the same right as the other to dispose of his property by sale or to appropriate it to the payment of preferred creditors, where the act is *bona fide.*

We have not considered questions that may arise upon the record if the dates are correctly set out in the statement of the case, nor the consequences of the lapse of time since the rendition of the judgment before the issue of the process under which the plaintiffs bought at the sheriff's sale.

We have confined our examination to the assigned errors and assumed the predominant right of the defendant to the land, unless it is successfully assailed for fraud, and the verdict negatives this.

There is no error in the record, and the judgment must be affirmed.

No error.                                        Affirmed.