JOHN R. PERRY et al. v. LOUIS HARDISON and ASA ELLIS.

*Exceptions—Reference—Levy—Fraud—Evidence—Execution Sale.*

1. The Supreme Court will only consider the exceptions to the *rulings of the Court below* in confirming or disaffirming the report of a referee.
2. The return of an officer reciting a levy is only *prima facie* evidence of the fact.

3. While a levy may be made upon real property without the officer being at or taking formal possession of it, it is necessary, to constitute a valid levy on personal property, that the officer should go to it and have it in his power to take possession of it if necessary.

4. The fact that property—the title to which is in dispute—sold under execution brought a price far below its true value is no evidence of fraud.

5. The facts that the mortgagor was sued ; that he executed a mortgage to one in his employment who had no other means of subsistence than his labor, to secure wages partly due and yet to become due ; that the deed was falsely dated ; that the mortgagor remained in possession and the mortgagee was a son-in-law of the mortgagor, are evidence to be considered by a referee or jury upon the *bona fides* of the deed, and their finding thereon is conclusive.

6. A conveyance, if made with intent to hinder creditors, is void, although upon a sufficient consideration, if the vendee had knowledge of the purpose for which it was made.

CIVIL ACTION, tried before *Avery, J.,* upon exceptions to referee's report, at February Term, 1887, of BEAUFORT Superior Court.

The tract of land, the title to which is drawn in question in this action, as described in the complaint, belonged to the defendant, Louis Hardison, under whom the plaintiffs claim by virtue of a sale under two executions to Charles F. Warren on July 1, 1878, and a conveyance from him to the plaintiffs.

The defendant, Asa Ellis, derives his title under a mortgage deed from said Hardison to secure the sum of two hundred dollars, made after the institution of the suits, but before the docketing of the judgments rendered thereon, pursuant to the executions issued, on which the Sheriff made sale; and alleged that this mortgage was executed in good faith to secure the payment of wages then due and to become due under a contract for services rendered and to be rendered as a laborer; and that his co-defendant Hardison occupied the land as his tenant at will. The plaintiffs charged that the mortgage was fraudulent, and asked that it be so adjudged and cancelled.

At Spring Term, 1882, there was a reference, by consent, to John H. Small, Esq., directing him to enquire and report whether the mortgage deed was fraudulent and the sum, if any, due thereon, and such other matters, whether of fact or law, as arose upon the case, subject to exceptions to be passed on by the Court.

After several reports and recommittals the referee made a final report to January Term, 1887, the material portions of which are:

"That the defendant Lewis Hardison has been seized and possessed of the land in controversy for many years prior to the bringing of this action; that he was in possession at the commencement thereof, and is now in possession; that his possession has been continuous, say since the war; that on the 9th day of May, 1878, a judgment was rendered against said Hardison in favor of D. V. Warren, executrix, upon a note for four dollars, dated Dec. 8th, 1852, which judgment was docketed in the Superior Court of Beaufort County on the same day. The execution was issued May 13, 1878.

That on April 30th, 1878, a summons was issued against Hardison at the instance of Wm. Baynor upon a note for $25, dated April 25th, 1860; the summons was served on May 1st and 4th, 1878, and judgment was rendered and docketed in the Superior Court of Beaufort County on May 9th, 1878, and execution was issued on May 13th, 1878.

That under the executions above named the land was sold July 1st, 1878, and purchased by Charles F. Warren, to whom T. J. Satchwell, Sheriff, conveyed the same.

That said Warren duly conveyed the land to plaintiffs by deed, dated 21st December, 1881.

That the claim of defendant Ellis is founded upon a mortgage which bears date 27th February, 1878, but was not executed or delivered until the 6th May, 1878; that it was proved on the same day by Robert T. Hodges, a Justice of the Peace, who affixed the signature of Mrs. Hardison, she being

unable to write, and that it was filed for registration the same day; that the summons in favor of Wm. Baynor was served on May 1st and 4th, 1878, before the execution of the mortgage; that defendant Ellis resided with Hardison during or most of the year 1877 and up to August 3d, 1878, when he married Hardison's daughter and removed to Martin County.

The defendant Ellis testified that he had worked with Hardison only about two or three months before the apparent date of mortgage, and that on its date he and Hardison came to town and it was written and signed; that the words 'Asa Ellis' and 'Martin County' and 'two hundred' were filled in the mortgage on May 6th, 1878, by R. T. Hodges, a Justice of the Peace.

That defendant Ellis was dependent upon his daily labor for his support, and from the evidence introduced his daily labor was not more than sufficient for his support; that during the time it is claimed by defendant Hardison he was working with him on account of this mortgage, he, Ellis, was working elsewhere on his own account, and at such times merely residing at Hardison's.

No note was introduced, and the defendant Ellis in his testimony did not account for the loss of it.

That the total value of defendant Hardison's taxable property was, in 1878, as listed for taxation, $170, including the land in controversy, and that the total value of defendant Ellis' property in said year was $26; the actual value of the land was $300.

That under the execution in favor of D. V. Warren, administratrix, v. Louis Hardison, the Sheriff levied upon the following personal property, as appears from said levy, viz.: One horse, 7 head of cattle, 4 hogs, 14 sheep, and other personal property; that said Sheriff copied the enumeration of said articles from the "tax list" of Beaufort County for 1878; that said Sheriff never attempted to enforce said levy on said personal property by taking said property in possession or

otherwise, and did not advertise the same for sale, and did not actually sell same, and that defendant Hardison, both prior and subsequent to said sale of the land, retained the possession and use of said personal property as long as it existed.

I find as conclusions of fact:

That the defendant Ellis did not pay or render any valuable consideration for the said mortgage, and that there is nothing due thereon.

That it was made to defraud the creditors of defendant Hardison, and is fraudulent and void.

That it was made to hinder and delay the creditors of defendant Hardison, whether there was any consideration or not.

From these facts, I find as conclusions of law : That the plaintiff having acquired the legal title by due process of law, and the defendant Hardison being admitted to be in possession of the land, the plaintiffs are entitled to recover the land in controversy, with the costs of this action, and I so adjudge."

The Court adopted the findings of fact, overruled the defendants' exceptions, confirmed the report, and rendered judgment for the plaintiffs, from which the defendants appealed.

*Mr. Geo. H. Brown, Jr.,* for the plaintiffs.
*Mr. Wm. B. Rodman, Jr.,* for the defendants.

SMITH, C. J.   The sole issues raised in the pleadings are as to the validity of this sale, and if upheld, the *bona fides* and legal efficacy of the mortgage deed.

The record in this case, as in others of which we have had occasion to speak, fails to assign *error in the rulings of the Court,* and compels us to search through the voluminous pages of the report and the testimony taken, as well as among the exceptions to the action of the referee, to ascertain what are his conclusions of law which are reviewable and open to

correction here. The practice cannot be allowed, and if our admonitions are to be disregarded, we shall be constrained to refuse to take cognizance of the cause and dismiss the appeal. The errors alleged to have been committed by *the Court* should be distinctly and plainly pointed out, as those intended to be presented and heard on the appeal.

The objections made on the rulings of the referee as questions of the admissibility of evidence, to-wit: as to the usage of farmers in the employment of laborers and paying them wages; the manner in which another employer of defendant Ellis paid his wages; the novelty of providing and securing them by a mortgage deed in advance of their being earned, were properly overruled, since, while their pertinency to the issue of fraud is not very apparent, we do not see how the evidence tended to mislead the referee.

The introduction of the tax books, as tending to show the financial resources of the defendants in an inquiry as to their means of self-support, is, in our opinion, not obnoxious to objection, and its force and effect was for the referee, acting in place of a jury, to pass on and determine.

The defendants insist that no judgments were rendered by the Justice against the defendant Hardison, upon the claims sued on, and that the certified transcripts of such as were docketed and under executions on which the land was sold, were without an original, and were in consequence nullities, the sale passing no title to the purchaser, the attorney and agent of the creditors whose claims he was collecting.

Whatever may have been the legal consequences, if the facts were, as supposed, they are misconceived and incorrectly stated. The Justice's civil docket shows a service of summons accepted, a trial, and "judgment given against the defendant and in favor of the plaintiff for the sum of $4, with interest from the 8th of December, 1852," &c., in the one case, and a substantially similar entry in the other, *mutatis mu-*

*tandis,* and these fully sustain the transcripts sent up and docketed in the Superior Court.

II. The defendants except further to the validity of the sale of the land until the personal property levied on, as shown in the Sheriff's return upon the executions, and shown to have been fully sufficient in value to pay them, had been sold, and the proceeds applied in satisfaction.

The referee finds that in fact no levy was ever made upon the personal goods mentioned in the return, and that the return was thus made upon an inspection of the tax lists and without their ever being in the possession or under the dominion of the officer, these being the constituents of a legal seizure.

The delivery by the debtor of a list of his personal property to the officer, it not being present, is not a levy. *Gilkey* v. *Dickerson,* 3 Hawks, 293 ; *Bland* v. *Whitfield,* 1 Jones, 122.

The return of a levy made is but *prima facie* evidence of the fact, and, remarks Pearson, J., in the case cited : " In regard to land it may be made in the office, although it may be ten miles distant, and the officer has never seen it. In regard to personal property, it is necessary for the officer to go to it, *so as to have it in his power to take it into actual possession* if he chooses."

See also, as to a sale of an ungathered crop in the field, *Skinner* v. *Skinner,* 4 Ired., 175, and *Rives* v. *Porter,* 7 Ired., 74, and other cases.

Here the *prima facie* proof is rebutted, and it is shown there never was any levy, and that the goods remained uninterfered with, in the defendant's hands, and were appropriated by him to his own use.

The imputation of bad faith in the conduct of the officer in making the sale finds no support in the facts found, and the mere fact that an insignificant sum was bid, must be attributed to the dispute about the title, growing out of the

execution of the mortgage, and an unwillingness to buy a lawsuit in buying the land.

But the essential controversy is as to the *bona fides* of the mortgage deed and its sufficiency to pass the title against a creditor pursuing the property under legal process.

The referee finds, and the Court sustains the finding, that the defendant Ellis had no legal claim against his associate as a consideration to support the conveyance, and if there was a debt, it was made with the fraudulent intent of evading his creditors and placing his property beyond their reach. While the recited consideration is that of a present indebtedness of $200 intended to be secured, it was testified by the mortgagor that this sum constituted the wages to be paid to the mortgagee for services in part already rendered and to be thereafter rendered as to the residue, and further that the latter was in his service from some time in the fall of 1876 to August, 1878, when having married the mortgagor's daughter he moved away.

The exception to the finding that there was no debt due or liability incurred by Hardison sufficient as a consideration to support his mortgage against creditors, and that it was but a donation to a stranger, raises the only question we care to consider, which is whether there is *any evidence* to warrant a finding in direct opposition to the testimony that there was a contract for services, to secure which the deed was given; that such services were rendered during a period of about twenty months, and had not been paid for. There was some evidence, however, of the poverty of Ellis and as his means of support were dependent upon his labor, that necessity must have forced him to require payment. However weak may be the grounds of such an inference in opposition to the positive testimony offered on this point, its sufficiency to rebut the testimony is not a question to be here considered; but belonging to the Court below, is conclusively settled, and we cannot say there is no

evidence and that the testimony ought to have been accepted as proof of the facts.

But the matter becomes unimportant in presence of the further finding that the mortgage, whether made on a *bona fide* liability or not, was made with an intent to hinder, delay and defraud the creditors of the mortgagor, as this would defeat the operation of the conveyance, if known to and participated in by the mortgagee. *Cannon* v. *Young*, 89 N. C., 264, and cases therein cited.

The defendants insist that no evidence appears of the existence of the vitiating element.

We do not concur in this contention, for there is much evidence tending to prove the fraudulent purpose.

The deed falsely sets out a *present indebtedness* evidenced by a bond alleged to be lost; whereas on the testimony it was to secure wages largely to be rendered in the future. It was executed just before the issuing of the warrants which were followed by judgments and executions under which the sale was made, and after being pressed for payment.

The giving such a security under the circumstances which might utterly fail, and even if intended to provide the means of paying the debts would and must be understood to have been meant to put off and delay the payment, and prevent an early disposition of the property and the appropriation of the proceeds thereto.

There are other evidences of fraud apparent in the concurrent acts of the parties and presented in the proofs, from which the illegal purpose is deduced that tended to show, and was evidence, more or less strong, showing the object and effect of the deed, and of these, as facts, the determination vested in the Court below.

These are the prominent rulings pressed in the argument for the appellants, and on which their counsel seem to rely, nor do we discover in the record any error in others.

There is no error, and the judgment must be affirmed.

Affirmed.