## MORGAN v. BOSTIC.

(Filed June 6, 1903.)

1. FRAUDULENT CONVEYANCES — *Deeds—Burden of Proof— Onus Probandi—The Code, Secs. 1545, 1546, 1547—Notice—Vendor and Purchaser.*

   The burden is on the purchaser of property conveyed to defraud creditors to show that he bought for a valuable consideration and without notice.

2. LIS PENDENS—*Notice of Pendency—Pleadings—Complaint—Notice— Vendor and Purchaser—The Code, Sec. 229.*

   A purchaser of land for value after the filing of a *lis pendens*, but before the filing of the complaint in the action, is not charged with constructive notice of any defects in the title.

ACTION by J. P. Morgan and others against J. B. Bostic and others, heard by Judge *W. B. Councill* and a jury, at September Term, 1902, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiffs, the defendants appealed.

*Merrimon & Merrimon* and *Tucker & Murphy,* for the plaintiffs.
*Frank Carter* and *T. H. Cobb,* for the defendants.

CONNOR, J. This action was brought by the plaintiffs, creditors of the defendant J. B. Bostic against him and the defendants Miller and Weaver, for the purpose of having the

two last named declared trustees for the benefit of plaintiffs
in respect to the title of certain real estate. Summons was
issued March 3, 1898, and served on defendants the same day.
The plaintiffs the same day filed in the office of the clerk of
the Superior Court of Buncombe County a notice of *lis pen-
dens* in proper form, containing a sufficient description of
the land sought to be subjected and the purpose for which the
action was brought, the land being situate in Buncombe
County. The original complaint was filed in the office of
the clerk of the Superior Court of Buncombe County Feb-
ruary 15, 1899. An answer was filed by the defendants de-
nying the material allegations of the complaint. At April
term, 1902, of said court, plaintiffs secured an order making
C. H. Yeatman party defendant. Summons was duly issued
and served upon Yeatman May 16, 1902. Plaintiffs filed an
amended complaint alleging that the defendant Bostic was
the beneficial owner of the land described in the complaint,
the legal title being in one C. S. Baylis, of New York. That
Bostic became entitled to the said land in a trade made be-
tween Baylis and himself, but being insolvent the legal title
remained in Baylis with the understanding that he was to
convey the same to such person as Bostic might direct. That
this arrangement was made by the said Bostic with intent to
prevent his creditors from reaching the said land, to hinder,
delay and defraud them in the collection of their debts.
That the said land was worth about $5,000. That thereafter
the said Bostic entered into an agreement with the defend-
ants, Weaver and Miller, in the name of the J. B. Bostic
Company, a corporation organized by the said Bostic, by
which he agreed to sell the said land to the defendants,
Weaver and Miller, for $1,250, and to have a deed made
therefor by the said Baylis, and with the further agreement
that after the $1,250 was paid back to Weaver and Miller
from the sale of the land, the balance of the proceeds would

be equally divided between the Bostic Company and Weaver and Miller. That pursuant to said arrangement the said Baylis conveyed the said land, known as the "Bede Smith farm," to said defendants; that this arrangement was made and the deed executed with intent to hinder, delay, defeat and defraud the creditors of Bostic and the defendants Weaver and Miller had notice thereof; that thereafter on the 18th of October, 1898, the defendants Weaver and Miller conveyed the land to C. H. Yeatman for the consideration as recited in the deed of $3,000, and Yeatman had notice at the time of the execution of the deed of the pendency of said action by the *lis pendens* filed therein; that on the same day, to-wit, October 18, 1898, the said Yeatman conveyed to Weaver and Miller certain lots in the city of Asheville for the recited consideration of $3,000.

The plaintiffs allege that by reason of these facts they were entitled to have Yeatman declared a trustee for their benefit.

The defendants denied the material allegations in the complaint, and for a further defense alleged that the defendants Weaver and Miller purchased the land from the J. B. Bostic Company, a corporation, and that the deed was made to them by Baylis; that at the time of the purchase neither of them knew that Bostic individually had any interest in the land, and they and all of them denied expressly that he had any such interest. They further denied that the defendants or either of them had any knowledge of the insolvency of Bostic; that their purchase of the land was in good faith and for full value.

There was testimony tending to show that some time during the year 1897, Bostic being insolvent negotiated a trade with Baylis, and as a part of the consideration and pay for his services in the matter he was to have the title to the Bede Smith farm; that the title was to remain in Baylis to be con-

veyed to such person as Bostic might name. It further appeared that some time during the year 1895 Bostic secured a charter for and organized a corporation under the name of "J. B. Bostic Co.;" that one hundred shares of stock were subscribed for, of which fifteen were taken by J. B. Bostic, trustee for G. P. Bostic; thirty-five by B. P. Bostic, thirty by B. P. Bostic; that J. B. Bostic was elected manager of the corporation at a salary of $1,800 per year. The contract with Baylis was made by the J. B. Bostic Company, and the contract with Weaver and Miller was made by the said company; that the defendant Bostic was the manager of the corporation and sold the land to the defendants Weaver and Miller, who paid $1,250 therefor. There was evidence tending to show that the value of the land was in excess of this amount. The defendant Yeatman swore that he had no knowledge or notice of the pendency of this suit at the time he bought the land and took title thereto. The plaintiffs contended that the organization of the J. B. Bostic Company was had with the intent to cover up the property of J. B. Bostic and remove it from the reach of his creditors, and that it was a fraudulent contrivance for that purpose. The defendants denied that they had any notice or knowledge thereof, and allege that they are *bona fide* purchasers for value. The court submitted the following issues to the jury:

1. Did the defendant J. B. Bostic cause to be executed to his co-defendants, Weaver and Miller, the deed set out in the complaint? Yes.

2. Did the J. B. Bostic Company cause to be executed to the defendants Weaver and Miller the deed set out in the complaint? ———

3. Was the deed executed with the intent to hinder, delay, defeat and defraud the creditors of J. B. Bostic? Yes.

4. Were the defendants Weaver and Miller *bona fide* purchasers of the land described in said deed for value and

without notice of or participation in any fraud, if there was any, on the part of J. B. Bostic or J. B. Bostic Company to hinder, delay, defeat and defraud the creditors of said J. B. Bostic? No.

Upon the coming in of the verdict the court rendered judgment declaring that the defendants Weaver and Miller took title to the land in trust for the creditors of Bostic, and that Yeatman purchased with notice of the pendency of this action and was fixed with knowledge thereof and held the title to the said land upon the same trust. There were numerous requests for instruction by both the plaintiff and defendant, many of them becoming immaterial by reason of the finding of the jury upon the first issue. Among other instructions given the jury, his Honor charged them at the request of the defendants "that the burden of proof is upon the plaintiffs to satisfy the jury that J. B. Bostic caused C. S. Baylis to execute the deed described in the complaint with intent to hinder, delay, defeat and defraud the creditors of the said J. B. Bostic," and unless they did so satisfy them, they should answer the third issue "No." He also charged the jury that the burden of the first issue was upon the plaintiffs. Upon the fourth issue he charged the jury that the burden was upon the defendants Weaver and Miller to show that at the time they purchased this land, they did it in good faith without notice of any purpose of Bostic to hinder, delay, defeat and defraud his creditors and that they purchased it for value; that if they did satisfy the jury that, at the time they purchased the land, they knew of it and its condition, and that they exercised their best judgment in ascertaining what the land was really worth, and after doing so they considered it not worth more than $1,250, allowing to themselves what would be a reasonable margin to be made upon the land as an investment, they would be purchasers for value within the meaning of the law; that in order to

protect themselves against a prior donor or creditor they must prove a fair consideration; that the court adopted in this connection the language used by the Supreme Court in *Worthy v. Caddell*"—which had been read to the jury and commented upon.

We are of opinion that his Honor correctly instructed the jury in regard to the burden of proof. It is well established by decisions of this court that if one executes a deed or enters into an arrangement for the purpose of defrauding his creditors, the grantee will take the title to the land conveyed subject to the claims of the creditors of his grantor unless he shall show by a preponderance of evidence that he purchased for full value and without notice of the fraudulent purpose and intent on the part of his grantor.

Section 1545 of The Code declares "that all deeds and other conveyances which might be contrived and devised of fraud with the purpose to delay, hinder and defraud creditors and others of their just and lawful actions and debts, shall be deemed and taken to be utterly void and of no effect. . . . " Section 1548 declares that nothing contained in the preceding section shall be construed to impeach or make void any conveyance . . . . *bona fide* made, and upon and for good consideration to any person not having notice of such fraud. This section has been frequently construed, and it would seem to be settled that, if one would take advantage of the provision in favor of *bona fide* purchasers for value without notice, he must allege and prove such fact as will bring him within the exception. In *Wade v. Saunders*, 70 N. C., 270, Pearson, C. J., says: "The finding of the jury 'that the deed executed by Aaron Saunders to his son, Jesse Saunders, was not *bona fide*, but was fraudulent and done with the purpose to defraud his creditors,' disposes of the other points made in the case on the part of the defendants; for how can Romulus F. Saunders, who claims

under Jesse, the fraudulent donee, stand upon fairer ground than he does, except as a purchaser for valuable consideration and without notice of the fraud attempted to be done by the said Jesse and his father, the defendant Aaron? There was no evidence of his being an *innocent purchaser*." In the same case upon the appeal by the plaintiffs the chief Justice says: "Romulus would be allowed to protect his title, by showing that he was a *bona fide* purchaser for valuable consideration, without notice of the fraud which vitiates the deed to Jesse, but the *onus probandi* would be on him, and *prima facie* his title would be affected by the same infirmity." In *Tredwell v. Graham*, 88 N. C., 208, Ruffin, J., says: "When a grantor executes a deed with intent to defraud his creditors, the grantee can only protect his title by showing that he is a purchaser for a valuable consideration and without notice of a fraudulent intent on the part of his grantor." *Saunders v. Lee*, 101 N. C., 2.

See *Cox v. Wall*, at this term.

We think that upon the whole record his Honor's instructions to the jury are sustained by the authorities.

There is, however, a question presented in the appeal in which we concur with the defendants. There is no evidence that Yeatman had any other notice than such as was given by the filing of the *lis pendens*. No issue was submitted to the jury in that respect, and we do not think it necessary that an issue should have been submitted. The facts in reference to Yeatman's connection with the transaction are undisputed and present the question, for the first time in this court, whether *lis pendens* should be filed at the time of filing the complaint? The Code, Sec. 229, provides: "In an action affecting the title to real property, the plaintiff—at the time of filing the complaint, or at any time afterwards, or whenever a warrant of attachment shall be issued, or at any time afterwards, the plaintiff or a defendant, when he sets up an

affirmative cause of action in his answer and demands sub-
stantive relief, at the time of filing his answer, or at any time
afterwards, if the same be intended to affect real property—
may file with the clerk of each county, in which the prop-
erty is situated, a notice of the pendency of the action, con-
taining the names of the parties, the object of the action and
the description of the property in that county affected thereby
.   .   .   .   From the time of filing only, shall the pen-
dency of the action be constructive notice to a purchaser or
incumbrancer of the property affected thereby."

This section was first considered in *Todd v. Outlaw,* 79 N.
C., 235, in which Bynum, J., says: "The defendant again
insists ·that the plaintiffs had notice by *lis pendens* in that
they purchased during the pendency of an action by Bond
against Vernoy to foreclose the mortgage upon the land now
in controversy. The principle of *lis pendens* is that the
specific property must be so pointed out by the proceedings
as to warn the whole world that they meddle with it at their
peril, and the pendency of such suit duly prosecuted is notice
to a purchaser so as to bind his interest.   .   .   .   .   But
the law of *lis pendens* has been greatly modified and restricted
by the Code of Civil Procedure, Section 90 (229). That
section provides that in an action affecting the title to real
property, the plaintiff at the time of filing his complaint or
any time afterwards," etc.

Referring to the decision in *Badger v. Daniel,* 77 N. C.,
251; *Rollins v. Henry,* 78 N. C., 342, the learned Justice
said that while he is of the opinion that the policy of the law
would be better carried out by following the English and New
York construction, this court has adopted a different con-
struction by its decisions, from which he does not feel at
liberty to dissent. It is there held that when the action is
pending in the county where the property is situated, it has
the force and effect of *lis pendens* and dispenses with the stat-

utory requirements, or rather that the statute does not apply to such cases.

There can be no question that if the plaintiffs had filed their complaint setting forth a description of the property and the purpose of the action, at the time of the issuing of the summons or at any time prior to the purchase by Yeatman, the pendency of the action would have been notice to the world and he would have taken title subject to the decree made in the cause. *Baird v. Baird,* 62 N. C., 317; *Dancy v. Duncan,* 96 N. C., 111, in which Smith, C. J., says: "No change in the rule is brought about by the statute prescribing how notice of a *lis pendens* shall be given, The Code, Sec. 229, when the transaction is in one and the same County, as in the present case, and notice is furnished in the record in the pending action."

In *Spencer v. Credle,* 102 N. C., 68, 78, Avery, J., says: "While strangers to the record are not affected with constructive notice of the pendency of an action involving the title to land lying in a county *other than that in which the action is pending unless the notice required under Section 229 of The Code has been given,* even purchasers for a valuable consideration are affected with notice of an action brought in the *County where the land lies, if the pleadings describe it with reasonable certainty, and take title subject to the final decree rendered in the action.* A different rule has been adopted in some other States where the same statute has been passed, but the law has been settled in this State by the cases of *Todd v. Outlaw,* 79 N. C., 235, and *Badger v. Daniel,* 77 N. C., 251."

In *Collingwood v. Brown,* 106 N. C., 362, Shepherd, J., discusses the construction of Section 229 and the authorities both in this and other States, saying: "We are of the opinion however, that, as to real property, there is but one rule of *lis pendens* in North Carolina, and that the provisions of The

Code, Sec. 229, are a substitute for the common law rule. When the court held in the cases cited that it was not necessary to file a formal notice of *lis pendens when the action was pending in the county in which the land was situated,* we do not understand that it intimated that two rules of *lis pendens,* varying in their extent and operation, prevailed in this State. . . . . This consistency can be secured by holding, as we do, that where the action is brought in the *county where the land is situated* and the pleadings contain 'the names of the parties, the object of the action and the description of the property to be affected in that county', this is a substantial compliance with The Code, Section 229, as to the filing of notice and puts in operation all of the provisions of the statute. There is no incongruity in thus holding as the statute simply provides, that the notice shall be filed with the clerk, and the place of filing would naturaly be with the *pleadings* in the action."

All of these cases hold that, if the plaintiff would bind purchasers *pendente lite* of lands lying in other counties, than that in which the suit is pending he must file a notice of *lis pendens* in each of such counties. The language of the statute is explicit in requiring such notice to be filed "at the time of filing the complaint, or at any time afterwards" this court holding that the filing of the complaint containing sufficient description of the property operates as a *lis pendens* in respect to land lying in the county in which the action is pending.

In *Arrington v. Arrington,* 114 N. C., 151, 159, Shepherd, C. J., says: "The rule of *lis pendens* while founded upon principles of public policy and absolutely necessary to give effect to the decrees of the courts, is nevertheless in many instances very harsh in its operation, and one who relies upon it to defeat a *bona fide* purchaser must understand that his case is *strictissimi juris."* For a long time, suits in equity

were deemed commenced for the purpose of affecting pur-
chasers *pendente lite* from the issuing of the subpoena.   This
rule was so harsh and unjust in its operation that "in the year
1705 it was provided by an English statute (4 Anne, Ch. 16,
Sec. 22) that no subpoena should issue out of a court of equity
until after bill filed, except in case of bill for injunctions to
stay waste or to stay suits at law commenced."   Since that
enactment, the general rule both in law and in equity, in the
absence of notice of pendency or equivalent statutes declaring
a different date that the facts necessary to notice by *lis pen-
dens* must be of record by the filing of the bill, petition, com-
plaint or equivalent pleading, and jurisdiction obtained by
service of process over the defendant from whom the interest
is acquired *pendente lite,* before *lis pendens* will commence."
21 Am. & Eng. Enc., 609, 610.   "A notice filed before the
filing of the complaint will become operative when the com-
plaint is filed, and is an absolute nullity only during the in-
tervening period."   *Ibid,* 615.

In *Stern v. McConnell,* 35 N. Y., 104, Hunt, J., traces
the amendments to the statutes in New York.   Prior to 1859,
the *lis pendens* could be filed at the commencement of the ac-
tion.   By an amendment made in that year, the time of fil-
ing was changed to the time of filing the complaint—as in
our Code, Section 229.   The court says: "So marked a change
cannot be disregarded.   It is evident that the legislature in-
tended to prescribe a different time or a different occurrence
as the regulating point for filing the notice."   Bennett on
*Lis Pendens,* Sec. 72.

The plaintiffs do not charge that Yeatman had any other
notice than that afforded by the filing of the *lis pendens* at the
time the summons issued.   They concede that he is a pur-
chaser for value, averring that he conveyed to the defendants
Weaver and Miller other real estate as a part of the consid-
eration.   Yeatman swears that at the time he purchased and

took title, he had no notice or knowledge of the pendency of the action or infirmity in the title of his grantors. We are therefore of the opinion that he having purchased prior to the filing of the complaint is not affected by the *lis pendens*. The judgment of the court below is erroneous in declaring that he holds the title to the land subject to any trust which attached to it in the hands of Weaver and Miller. We do not decide upon the suggestion in plaintiffs' brief that they may follow the land conveyed to Weaver and Miller by Yeatman. The judgment so far as it affects the defendant Yeatman must be reversed.

The parties will take such final action in the case as they may be advised. It was not necessary for the defendant Yeatman to ask for any issue in regard to the *lis pendens;* the facts appear in the record. The plaintiffs sought to charge the land in his hands by the *lis pendens*. As we have seen, not having complied with the statute they cannot do so.

There is error.

Error.