HENY REIGER *vs.* JOHN D. DAVIS *et al.*

It is a rule of law, that where a debtor, much embarrassed, conveys property of much value to a near realative, and the transaction is secret, and no one present to witness the trade except these near relatives, it must be regarded as fraudulent. But where these relatives are examined as witnesses, and depose to the fairness and *bona fides* of the contract, and that there was no purpose of secrecy, it then becomes a question for the jury to determine the intent of the parties, and to find the contract fraudulent, or otherwise, as the evidence may satisfy them.

A Judge, in commenting upon the testimony, may, by his manner and emphasis, intimate an opinion upon the facts, and violate the act of 1796. The record, however, must show *such* peculiarity of manner and emphasis, that the Court may see whether or not the act has been violated.

An absolute conveyance for a valuable consideration is good, notwithstanding the intent of the maker to defraud, if the grantee was not a party to such fraud, and bought without any knowledge of the corrupt intent.

[*Satterwhite* v. *Hicks*, Busb. 105. *State* v. *Simmons*, 6 Jones 21. *Derries* v. *Haywood*, 63 N. C. 53, and *Lassiter* v. *Davis*, 64 N. C. 498, cited and approved.]

Civil action tried before *Clarke, J.,* at Spring Term, 1871, of Carteret Superior Court.

The action was brought to recover possession of a lot in the town of Beaufort. Both parties claimed under Abigail Hill; the plaintiff under a judgment and execution against Abigail Hill and a sale by the sheriff in May, 1869 ; the defendant, Ward, under a purchase from the said Abigail Hill, prior to the teste of plaintiff's execution, his deed bearing date November 1st. 1865.

Plaintiff introduced the record of a judgment, at Fall Term, 1867, of Carteret Court against Abigail Hill and C. W. Hill, which was founded on a note given in 1856. Upon this judgment executions were issued, the last of which was a *ven. ex.* from Fall Term, 1868, under which the sheriff sold.

The plaintiff, to show the indebtedness of Abigail Hill, introduced the record of other judgments against her, some of them upon claims due before the date of defendants' deed. He also introduced evidence tending to show the insolvency of the said Abigail Hill after her conveyance to the defendant Ward. It was in evidence that the defendant Ward was a nephew of Mrs. Hill, and that the consideration of the deed was a note of $2,000, principal and interest given by Mrs. Hill to her son C. W. Hill and which had been purchased by Ward for the sum of $1,300, the face of the note. Evidence was also introduced tending to show that Ward had very little property, that he was a young man who had been in the Confederate army until the surrender, and that during the year 1865 he lived with Mrs. Hill, and was not engaged in any particular business. It was also proved by a witness that he was the agent of Mrs. Hill to rent her lots in Beaufort, from the Fall of 1865 until the fall of 1868, and the first information he had of the sale was from a letter dated in April 1867.

The defendant Ward was examined as a witness. He testified, that he bought the lot in dispute from Mrs. Hill for $2,000. The payment was made in a note due from her to her son C. W. Hill for $1,300, given in 1866. He purchased this note for $1,300, and paid for the same five hundred dollars in cash and the remainder in a note given by himself for $800. This purchase was made in October 1865. The deed was written by C. W. Hill and delivered at Mrs. Hill's house a few days after it was written. It was kept by witness until its registration in September 1868. Witness had no special business in 1865, and lived with C. W. Hill and Mrs. Hill his mother. He worked for the five hundred dollars.

He further testified, that he claimed the property from and after the execution of the deed to him in November, 1865, and that the note was given to C. W. Hill by his mother in settlement of her guardian account.

C. W. Hill was examined as a witness and testified, that

there was no *secrecy* in the transaction between his mother and defendant Ward, and that the trade was known to the neighbors. The note of $1,300 was given to him by his mother, for the consideration which had been stated by Ward. He was paid as Ward had testified, and used the $800 note in payment of debts. Witness sold the note to raise money which he needed at the time. He wrote the deed and witnessed it with two others.

There was evidence as to the value of the property, varying from two thousand to three thousand dollars.

His Honor charged the jury, that fraud vitiates every transaction into which it enters, and affects all who are cognizant of it. The part for the jury to determine is, was the conveyance from Mrs. Hill to Ward, dated November 1st, 1865, executed for the purpose of defrauding the plaintiff, a creditor of Mrs. Hill, or all of her creditors? If so, the deed is void.

If Mrs. Hill and her son C. W. Hill conspired to cover up her property to defraud her creditors, Ward must be proved to have known it, or circumstances must be shown which would have conveyed such information to a man of ordinary prudence and intelligence.

A voluntary conveyance of property without consideration by one in insolvent circumstances would be *prima facie* fraudulent. But a man in failing circumstances may prefer one creditor to another. Mrs. Hill may lawfully prefer her son to other creditors, but such transactions are viewed with suspicion. A badge of fraud is secrecy. How was it in this case? Ward and Hill say there was no secrecy, and, in addition, there were other witnesses to the deed. If the vendor remains in possession, it is not indication of fraud if such possession is consistent with the deed; but continuing in possession with gross inadequacy of price is a badge of fraud. Does the evidence satisfy that Mrs. Hill was insolvent in 1865? Her becoming so after the deed to Ward does not affect him. Does the bargain between Ward and C. W. Hill, in the purchase of the

note for $1,300, afford, of itself, or in connection with other circumstances, satisfactory evidence that Ward was a party to the *iniquitous* transaction of endeavoring to defraud Mrs. Hill's creditors? Is it consistent with reason that every man who trades with one in failing circumstances is a party to a fraud?

If Ward made a good bargain, it does not vitiate the deed, unless the price was *grossly inadequate.* And even if Mrs. Hill and her son acted dishonestly, it does not affect Ward if he was an innocent purchaser for a valuable consideration. The jury must be satisfied, that the note purchased was fictitious, and that Ward knew it, or ought to have known it. His Honor said that the purchase of a note for $1,300, worth $2,000, was not a grossly inadequate price. Nor is the purchase of property valued at $3,000 for $2,000, with rents reserved, such a grossly inadequate price, as of itself singly and alone, to constitute fraud.

There was a verdict for the defendants. Rule for new trial. Rule discharged. Judgment and appeal.

*Haughton,* for the plaintiff.
*Smith & Strong* and *Batchelor,* for the defendants.

BOYDEN, J. This was a civil action for the recovery of land, both parties claiming under Abigail Hill. The plaintiff, by a purchase at a sale of the Sheriff, under a judgment and execution against the said Abigail, and the defendants by a purchase made by Ward, under whom the defendant claims, previous to the test of the execution under which the plaintiff sets up title; and the main question in the cause was as to the *bona fides* of the sale to Ward. This is quite a different case from the case of *Satterthwaite* v. *Hicks,* cited by plaintiff's counsel. In this case the parties to the transaction were examined as witnesses, and testified that the trade was fair and *bona fide,* and likewise proved the consideration paid for the land was a fair price, and

that there was no purpose of secrecy. But in the case cited by plaintiff there was no evidence how, or upon what consideration the several bonds used in payment were founded, and these formed a large portion of the consideration for the purchase.

It is a rule of law, to be laid down by the Court, that when a debtor, much embarrassed, conveys property of much value to a near relative, and the transaction is secret, and no one is present to witness the trade but these near relatives, it is to be regarded as fraudulent; but when these relatives are made witnesses in the cause, and depose to the fairness and *bona fides* of the transaction, and that there was, in fact, no purpose of secrecy; it then becomes a question for the jury to determine the intent which influenced the parties, and to find it fraudulent or otherwise, as the evidence might satisfy them. Upon this part of the case, we think his Honor submitted the question fairly to the jury, with proper instructions, to enable them to arrive at the truth of the transaction.

There were various badges of fraud alleged on the part of the plaintiff, but all these were brought by his Honor distinctly to the notice of the jury, in his charge, with the like proper instruction, and we find no error in this.

But it is insisted on the part of the plaintiff, that his Honor invaded the province of the jury, and violated the Act of '96, by expressing an opinion upon the facts of the case.

This violation of the Act of '96 is alleged to ·have been made in using the following language:

Does the bargain between Ward and Dr. Hill, by which he bought a note on Mrs. Hill, amounting in principal and interest to $2000, for its face, $1300, afford of itself, or in connection with the embarrassed condition of Mrs. Hill, satisfactory evidence that Ward was a party to the iniquitous transaction of endeavoring to defraud Mrs. Hill's creditors? Is it consistent with reason, that every man who trades with one in failing circumstances, is a party to a fraud?

These questions might have been asked in such a tone and manner, as to convey to the jury his Honor's opinion upon the facts. But when the record merely shows that these questions were asked, without anything in the record showing the emphasis or manner in which they were asked, this Court cannot see that his Honor violated the Act of '96. In the case of the *State* v. *Simmons*, cited as authority by the counsel, it appeared upon the record that his Honor who tried that case, asked the question with emphasis and in an animated tone, *where was the evidence to establish the fact?* Had the record in this case showed that these questions had been asked with peculiar emphasis and in an animated tone, as in the case of the *State* v. *Simmons*, this Court would have felt bound, by that authority, to grant a new trial.

It is further insisted that his Honor erred in instructing the jury, "that if Mrs. Hill and her son conspired to cover up her property to defraud her creditors, Ward would not be affected by such fraud if he had no knowledge thereof, and the trade was in fact *bona fide* on his part."

The counsel for the plaintiff, to show that his Honor erred in this part of his charge, cited the case of *Devries and Co.* v. *Phillips and Haywood*, 63 N. C. R. 53. The opinion of his Honor in that case is misrepresented, if it is supposed to mean that a fraudulent intent on the part of the debtor alone will render the contract void on the ground of fraud, when the grantee has no knowledge of this fraudulent intent, and the trade is *bona fide* on his part and for a fair consideration. To vitiate the trade and render it fraudulent and void, the grantee must be a party to this corrupt intent, or have some knowledge of the execution of it at the time of the execution of the contract. *Lassiter* v. *Davis*, 64 N. C. R. 498.

There is no error. This will be certified.

Per Curiam.                              Judgment affirmed.