GEORGE W. CANSLER, Administrator. and others v. WILLIAM W. COBB and wife.

### *Deed—Fraud—Practice—New Trial.*

1. Where A made a deed to his daughter, in consideration of services rendered and to be rendered in attending upon him in his old age, with intent to defraud his creditors, the deed is void even although the daughter had no knowledge of such fraudulent intent.

2. If there is a discrepancy between the "record" and "the statement of the case" sent by appeal to this Court, the record must govern. And if the discrepancy is a material one, a new trial will be ordered.

(Observations of THE CHIEF JUSTICE upon actual and constructive intent to defraud creditors.)

SPECIAL PROCEEDING, commenced in the Probate Court of Lincoln County and removed to and tried at Fall Term, 1876, of CATAWBA Superior Court, before *Buxton, J.*

The plaintiffs, creditors, filed a petition to sell the land of Henry Cansler, the intestate, for assets to pay debts. The defendants who were in possession of the land filed an answer claiming title under a deed from Henry Cansler to his daughter, the feme defendant dated the 19th of March, 1869, the consideration expressed therein being $3,000, and the quantity of land conveyed being estimated at 236 acres. The intestate was greatly involved and had caused his homestead to be laid off upon this tract of land, and in said deed the homestead was excepted. It was alleged that he was not only largely indebted but totally insolvent when he made the deed. The defendants alleged that he owned considerable property, and that if his other lands which had been sold under execution after the date of said deed, had brought a fair price, the proceeds would have been amply sufficient to pay his debts; that the consideration of said deed was services rendered by his daughter, the feme defendant, and fully equal to the value of the land conveyed, and that the deed itself was a *bona fide* conveyance without any fraudulent knowledge or purpose on the part of the defendants; that previous to the death of his wife in 1866, the intestate became so seriously afflicted with paralysis as to render his condition helpless, and that constant attention was rendered him by his daughter before and after her marriage, and that she nursed him until he died on the 20th of February, 1875, at the age of 75 years.

The plaintiff, George W. son of Henry Cansler, was examined by the defendants, and testified as to the helpless condition of his father and the services rendered by his sister as alleged by defendants; and also that the intestate informed him in 1866, that he had made an agreement with his daughter, that if she would attend to him the balance of his life he would give her his home plantation for her services. The deed was drawn up by a confidential friend and the $3000 inserted by the direction of Henry Cansler on the

idea that a money consideration must be stated in a deed. Various estimates were placed by the witnesses upon the services rendered by the daughter, and upon the value of the land encumbered with the homestead.

Under the instructions of His Honor, which are sufficiently set out by THE CHIEF JUSTICE in delivering the opinion, the jury found "that the feme defendant had paid a fair price for the land and did not intend to defraud her father's creditors, although he did." Judgment for defendants. Appeal by plaintiffs.

*Messrs. W. N. H. Smith* and *G. N. Folk,* for plaintiffs.
*Mr. M. L. McCorkle,* for defendants.

PEARSON, C. J. "Hard cases are the quicksands of the law."

If the grantor had died soon after the execution of the deed, the price would have been inadequate; but as he happened to live several years after the execution of the deed, the price paid by the grantee was a full one, and it seems hard that she should lose the land as she had paid a full price for it. Considerations of this nature ought not to be allowed to affect the right of the parties. So the case must be determined upon legal principles.

The grantor being greatly in debt after having his homestead and personal property exemptions assigned, was minded to make further provision for his own ease and comfort at the expense of his creditors, by conveying to the grantee the residue of his real estate in consideration of her services in waiting upon and attending to him. Beyond all question, the grantor made this deed with an intent to defraud his creditors, and the jury so find.

When the grantor executes the deed with an intent to defraud his creditors, the grantee can only protect his title by averring that he is a purchaser for valuable consideration

without notice of the fraudulent intent on the part of the grantor. Bat. Rev. ch. 50, § 4.

The case as settled by His Honor sets out, that His Honor charged, "that if the services rendered by the daughter after she arrived at age were fully adequate to the value of the land, then in respect to these services she was to be regarded in the light of both creditor and purchaser, and the deed would be valid in the absence of any actual intent (on the part of the daughter) to defraud his creditors." His Honor added; "If a fair price was paid, it would require a fraudulent intent in both the grantor and the grantee to avoid the deed."

The case also sets out, "upon these instructions the jury found in response to the issue submitted, that the feme defendant had paid a fair price for the land and did not intend to defraud her father's creditors, although he did."

These instructions and the finding of the jury show that the case was not made to turn upon its merits, but upon a point very favorable to the feme defendant. No one could suppose that she intended to defraud her father's creditors. Her purpose was to acquire title to the land in consideration of the services she had rendered, and was bound afterwards to render, in waiting on and attending to him until his death. But the fact that she did not intend to defraud her father's creditors is not enough to support the deed in spite of the fraudulent intent on the part of her father. If she had notice of his fraudulent intent, that avoids the deed for it makes her *particeps criminis*; and "the deed would not be valid in the absence of *any actual intent* (on the part of the daughter) to defraud his creditors;" the word *actual* being used to exclude *constructive* intent implied from the fact of notice, and whether used with that intent or not, it certainly was calculated to mislead the jury.

A says to B, "I find I owe more than I can pay. My object is to get money and go to Texas. You can have my

land for a fair price in cash." B agrees to buy the land and pays the money. The creditors can take the land from B on the ground that although he purchased at a fair price yet he had notice. True, B had no *actual* intent to defraud the creditors of A. His purpose was to buy the land. Still he had notice that the intent of A was to defraud creditors, and such notice fixes on him a *constructive* intent. But for his aid, A would not have been able to dispose of his land and leave the country. This is familiar doctrine and is applicable to our case although such instances are of rare occurrence.

The proposition that a man, who owes more than he can pay, can provide a support for himself for the balance of his life by conveying his land in consideration that the grantee will furnish such support and thus defy his creditors, will not bear a statement. The peculiar circumstances of this case—the grantor a helpless old man, the grantee his daughter who alone can nurse him, and that she performed the services with faithfulness—do not take the case out of the operation of the principle, although it makes the application more difficult in practice by reason of the sympathy which it is calculated to excite.

Upon looking over the record we are embarrassed by a discrepancy between the issue there set out, and the issue set out in the statement of the case.

*The record;* Issue No. 5. "If his purpose was to delay, hinder and defraud his creditors, did his daughter know of that purpose? Ans. She did not."

*Statement of case;* "Upon these instructions the jury found in response to the issue submitted, that the feme defendant had paid a fair price for the land and did not intend to defraud her father's creditors, although he did."

The rule in such cases is that the record governs, but when the discrepancy is a material one, it results in a new trial because it shows that either the Judge or the jury or

both, did not understand the case. If His Honor thought that an *actual intent* on the part of the daughter to defraud her father's creditors, and notice merely that such was his intent, are identical propositions, he was under a grave mistake as we have seen, and his charge was calculated to mislead.

It will be noted that the feme defendant does not in her answer deny that she had notice that her father was greatly in debt, and that his object was to take care of himself at the expense of his creditors. It is set out in the deed that her father had had his homestead assigned; so she knew that much, and she also knew that $3000 was certainly set out as the consideration paid by her, when in truth it was her services rendered and to be rendered.

Upon the next trial all of these facts and surroundings will be duly considered. New trial ordered.

PER CURIAM. *Venire de novo.*