J. N. STALLINGS, Adm'r, v. WILLIAM LANE and others.

*Evidence of Agricultural Agreement—Surety and Principal— Additional Security does not release surety, when.*

1. Evidence of the relations of parties farming together and the contributions of each in the cultivation of crops, and that the portion of one was credited on his note to a third party, warranted the jury in the absence of direct proof in finding that the crops were to be divided between them. And, after making such agricultural agreement, the deed of assignment of one of them, mentioned in the case, conveys only his interest in the crops.

2. Where additional security is given by the principal debtor, with no understanding for further time, and the remedy to enforce collection remains as before; *Held,* that the surety is not thereby discharged: such security enures to the advantage of the surety.

(*Deal* v. *Cochran,* and cases cited, 66 N. C., 269; *Carter* v. *Duncan,* and cases cited, 84 N. C., 676; *Bank* v. *Lineberger,* 83 N. C., 454; *Harshaw* A. *McKesson,* 65 N. C., 688, cited and approved).

CIVIL ACTION tried at July Special Term, 1882, of DUPLIN Superior Court, before *Gilliam J.*

Defendant appealed.

No counsel for plaintiff.

*Mr. H. R. Kornegay*, for defendants.

SMITH, C. J.   On January 2d, 1868, the defendant rented from J. N. Stallings and Joel Loftin (to whom joint letters of administration on the estate of Nancy Sollis were issued) a tract of arable land of the intestate for that year, and at the same time executed his note under seal with the other defendants as sureties, payable to them in their representative capacity at six months, for articles of personal property bought at the administration sale, in the sum of $245.96.   The value of the note was afterwards reduced by three successive partial payments to the administrator, Loftin, indorsed thereon, as follows: One on June 3d, 1868, $19.41; on January 29th, 1869, $111.33, and on April 15th, 1870, $97.62.

On August 17th, 1868, the debtor, Lane, executed a deed of mortgage to the said administrators, reciting his indebtedness on said note and on another for $95.55, due on January 1st, 1869, with the same sureties, conveying "his right, title and interest in the crop raised upon the land rented" as aforesaid, and "a cart," to secure and provide for the payment of the said notes, with a concluding clause in these words: "And the said party of the first part (Lane) agrees to hold the same for the payment of the said notes as agent of said parties of the second part," the mortgagees.

Upon the trial of the issues it was in proof that one Bason, whose daughter Lane had married, occupied and cultivated the farm together during the year 1868, the former furnishing two mules, his own and his childrens' labor; and the latter (Lane) his own personal services in making the crop.

Evidence was also introduced tending to show that Loftin,

since deceased, received part of the crop of cotton raised on the premises in 1869, which he sold and applied the proceeds as an indorsed credit upon the bonds; that Lane's share of the corn crop of 1868 passed into Loftin's possession and was by him advanced to Lane to make the crop of 1869, under an arrangement that it was to be paid therefrom.

There was no direct proof of the terms on which Lane and Bason farmed during the year, but the value of the entire crop was sufficient to discharge the secured debts.

The defendant contended that the taking the assignment from Lane of his interest in the crop, then growing and thereafter to be gathered, involved an implied contract to extend the time of payment beyond that fixed in the note, and discharged the sureties from further liability for the debt; and he asked these directions to be given to the jury:

1. The entire crop grown on the land in 1868 passed under the defendant's mortgage to the administrators, and as it ought to have been received and applied by them to the debts, and if so applied would have paid them in full, the omission of the mortgagees to do so and its consequent loss operate as an exoneration of the sureties.

2. There is no evidence that Bason had any vested interest in the crop, or was entitled to any share th ereof

The instructions were refused, and the court charged:

1. That there was evidence, though not direct and positive, tending to show that the farm was cultivated in 1868 on shares, taken in connection with a declaration of Loftin, called out by the defendant, "that he (Loftin) had received Lane's part of the crop of cotton and credited it on his note," and it was for the jury to ascertain what shares each was to have in the product of the farm.

2. If the crop of 1868 was raised by the joint labor of the parties under the agreement entered into before the making of the assignment by which they became croppers, then the deed of Lane only conveyed his share and interest therein.

The court further held that the acceptance of the mortgage as a further security for the debts and upon the terms therein contained, did not imply a contract to defer payment, and did not, in law, relieve the sureties from their obligation.

The correctness of these rulings are before us on the appeal.

The exceptions to the refusal of the court to give the directions asked, and to the directions given, we think have no support in the evidence heard. There was evidence of the relations of the parties who farmed together, and the contributions of each towards the tillage of the land and making the crop, from which, in the light of the declaration brought out, the jury were fully warranted in arriving at the conclusion that the crop was to be divided and perhaps in equal proportions.

Nor is the construction, put upon the description of the property contained in the mortgage, obnoxious to just criticism. "The *right, title and interest in the crop raised*" must be that which the mortgagor himself had and could assign, not that of his associate cropper, which he could not transfer by his own act.

He does not undertake to pass the crop as if it was all his, but only his *interest;* that is, his share thereof.

We concur also in the opinion of the court as to the character and effect of the mortgage, and its acceptance by the administrators upon their relations toward the sureties.

"It is a well settled principle of equity as between creditor and surety," observes PEARSON, C. J., "that where the creditor by a binding contract, and not as a mere *nudum pactum,* gives further time to the principal debtor, the surety is discharged by matter *in pais,* as it is termed in the books." *Howerton* v. *Sprague,* 64 N. C., 451.

"It must be," in the language of READE, J., "a valid contract with the principal debtor without the assent of the surety, by which the rights or liabilities of the surety are injuriously affected, to exonerate the latter. *Deal* v. *Cochran,* 66 N. C., 269.

Even a usurious contract, at least where the consideration is executed, though avoidable by the creditor, will have the like

effect. *Pippin* v. *Bond*, 5 Ired. Eq., 91; *Scott* v. *Harris*, 76 N. C., 205; *Carter* v. *Duncan*, 84 N. C., 676; *Bank* v. *Lineberger*, 83 N. C., 454. See 2 Am. Lead. Cas., *United States* v. *Howell*, 136, and notes.

Our attention has been called to the decision in *Harshaw* v. *McKesson*, 65 N. C., 688, as maintaining the proposition that the taking a further security for the debt in the assignment of a growing and immature crop, by implication involves an agreement to wait until it is fit to be gathered and removed, and that this extension of the time of payment releases the sureties.

That case, however, does not warrant the deduction of any such broad and comprehensive proposition, as a brief examination will show.

The plaintiff's testator holding several single bonds against the defendants, through an agent, not being present himself, procured from McKesson, the principal debtor, the execution of a mortgage of lands lying in several counties, in which was a provision that the deed should be void if the debtor, "according to an agreement now made," shall pay the secured debts—"the one-third part thereof in three years; one-third part in four years; and the remainder in five years from this date." When the conveyance was made, and as part of the transaction, the agent assuming to act for and in the name of his principal, executed a covenant whereby indulgence was to be given for the payments as set out in the mortgage. The action was brought upon one of the secured debts due upon its face, but before the expiration of the time limited in the mortgage and in the covenant. The court held that while the covenant was inoperative for want of authority in the agent to make it, nevertheless, *the obligation* in the bond had been modified by the obligor in the accepted mortgage, and the executors could not sue until the time specified therein had expired. The ruling is put upon the ground that a new security is taken for one pre-existing, giving further time

for payment; and this implies an agreement to forbear suing upon the first.

The assignment in the present case bears none of the essential features of the mortgage of McKesson, on which that decision is made to rest. It is unconditional and absolute. No defined day for selling is fixed—no time for redemption given—and the secured debt remains in every respect the same as before, capable at once of being put in suit. There is no delay necessary in proceedings for foreclosure, and nothing contained in the provisions of the instrument from which an understanding to indulge can be inferred. The taking the additional security in the property of the principal debtor enures to the advantage of the sureties as well, since it is in favor of their interests, and must first be applied to the debt. How can they complain of this, and of what right are they deprived? To exonerate the sureties because the creditor obtains property of their principal to increase his own security and theirs alike, is to take away from the creditor the right to seek the means of satisfaction out of his effects, while at the same time he is subserving the interest of the sureties.

"Such an agreement to suspend or delay will not be inferred from the mere giving the collateral security with power to sell the same at a certain time, if the debt be not paid." 2 Pars. Cont., 685.

In *Eures* v. *Widdowson*, 4 C. and P., 151, referred to by Mr. Parsons, an assignment of property was made to secure sums due and future demands, with a power of sale not to be executed until after six months' notice. An action was brought on two bills of exchange protected in the assignment, which was set up as a defence, and Tindal, C. J., says: "I am of opinion that such an assignment can only be considered as a collateral security, and that the personal remedy *is not suspended, as there is not any clause to that effect in the deed.*"

If the right to sue is not obstructed by taking an assignment when there is a postponement of sale of the assigned property,

still less can it be when, as in our case, no such provision is found; and, without a valid contract to give time, the sureties cannot claim a discharge.

There is no error, and the judgment must be affirmed.

No error. Affirmed.