ISAAC EIGENBRUN v. W. H. SMITH and M. COHEN & SON.

*Fraudulent Conveyance—Evidence—Purchaser—Trial—Judge's Charge.*

1. A purchaser from a trustee under a conveyance containing upon its face evidence of a fraudulent purpose to defeat creditors takes with notice of such evidence.

2. Although a purchaser may pay a full price for the property, yet if he purchased with the intent to aid his vendor to defeat the latter's creditors his purchase will be void.

3. A conveyance to a trustee for use of creditors, if made with intent to defraud any one of the vendor's creditors, is void, though the trustee be ignorant of such intent, and his conduct is *bona fide.*

4. A provision in a conveyance for use of creditors, by which the vendors shall be allowed to retain from the property conveyed such exemptions as they may be entitled to, is not evidence of fraud; but a provision that the assignees shall be retained in the service of the trustee as salesmen, and that the trustee shall be exempt from liability for their conduct as such, is evidence of a fraudulent purpose.

5. It is no ground for a new trial that the plaintiff failed to introduce evidence, which, by the permission of the Court, he withheld for rebuttal, because the defendant offered no proof ; he should have asked permission to continue his proofs when the defendant declined to introduce evidence.

6. It is not error for the Court, in instructing the jury upon the *bona fides* of an alleged fraudulent sale, to use the terms "fair price" instead of the words "for value."

7. It is not competent to contradict a proposition made by a party in one action by a pleading prepared by his attorney involving the same facts, but in a different action.

(*Palmer* v. *Giles*, 5 Jones Eq., 75; *Frank* v. *Robinson*, 96 N. C., 28; *Davenport* v. *McKee*, 94 N. C., 325, cited).

CIVIL ACTION, tried before *Merrimon, Judge,* at May Term, 1887, of VANCE Superior Court.

The plaintiff claimed certain property mentioned in the pleadings, under a deed of trust, executed by Robinson & Holt, to H. T. Watkins, dated March 17th, 1886, and a bill of sale from the said trustee, and Robinson & Holt, to himself, dated March 19th, 1886.

The defendant Smith is the sheriff of the county of Vance, and as such, levied upon and took possession of said property under execution, in favor of his co-defendants, M. Cohen and Charles Cohen, who alleged that the deeds under which the plaintiff claims, were made to defraud creditors, and void, as against them, they being creditors.

The issues submitted were:

1. Is the plaintiff the owner, and entitled to the possession, of the property claimed?

2. What was the value of the property?

The plaintiff offered in evidence the deed of trust and bill of sale, the execution of which was proved.

He then introduced G. W. Holt, who testified "that he was one of the partners of Robinson & Holt, but did not sign the bill of sale; that he had relinquished to the plaintiff, Eigenbrun, his interest in the goods mentioned in the bill of sale, except his personal property exemptions." He testified further, that " he knew the goods which were seized by the sheriff, the defendant, and that they were part of the same goods sold to plaintiff, and their cost price was $120; that the goods consisted of clothing and shoes; that they were winter goods; that they were seized in March, and were at that time in possession of H. T. Watkins, trustee; that the cost value of the whole stock of goods would have been about $2,000; that the value of the personal property assigned to him as personal property exemptions was not worth $500; that the stock of goods was worth $2,000, exclusive of the personal property exemptions; that his exemptions were appraised by Willie Britt, Lewis Barnes and Benjamin Smith; and that C. W. Cole, deputy sheriff, had charge of the appraisers; that Sam Davis, a clerk in the store, sued the firm of Robinson & Holt, and got a judgment, and had the personal property exemptions of himself and Robinson set apart; that an inventory of the goods was taken."

At this point in the examination of Holt, the Court inquired of the plaintiff's counsel if it was their purpose to go into their entire case at this time, and the counsel replied that it was, and defendant's counsel stated that he had no objection. Whereupon the Court stated, that as the Supreme Court had said in regard to the deed of trust, that they were not prepared to say that the deed upon its face was void for fraud, but the evidence of fraud apparent upon the face of the deed might be considered by the jury in connection with other facts and circumstances in ascertaining whether the deed was made with a fraudulent intent,

14

the Court would, in the interest of time, require the defendants at this point to show such facts and circumstances outside of the deed as they relied upon to establish that the deed was made to defraud creditors.

The counsel for the defendants then cross-examined the witness at much length in regard to the time, manner and circumstances under which the bill of sale was executed, tending to impeach it by showing that it was in the night; that the door was closed; that the sheriff was at the door, and not permitted to enter; that the claim of the defendants, M. Cohen & Son, was resisted, and other facts and circumstances tending to show, as defendants insisted, that the transaction was not *bona fide.*

After the cross-examination, the witness was re-examined by counsel for plaintiff, his testimony tending to show, as plaintiff alleges, the *bona fides* of the transaction.

The deed provided, among other things, that Robinson & Holt should be employed by the trustee as salesmen, at $50 per month each.

Plaintiff then introduced C. B. Cole, who, on cross-examination, testified that he had in his hands the execution of M. Cohen & Son against Robinson & Holt, and that he couldn't get into the storehouse, because it was fastened up; that it was about midnight before he could get in; that he saw Robinson & Holt; Robinson didn't have much to say; one time witness tried to get in the store and Robinson slammed the door; that witness got the execution after twelve o'clock in the day and was trying to get in the store from time to time until midnight and Eigenbrun claimed the goods and forbade the levy.

At this point the plaintiff, Eigenbrun, was sworn and called to the witness stand, but before he was examined, counsel for plaintiff agreed that certain witnesses who had been subpœnaed to testify as to character only, might be introduced and examined by the plaintiff. The plaintiff then introduced four witnesses who testified that the general

character of Augustus Wright and the plaintiff, Eigenbrun, was good.

Plaintiff then announced that he would close his case and introduce Wright, Eigenbrun and other witnesses in reply.

The defendants then said that they would introduce no testimony.

The Court charged the jury as follows:

If the assignment by Robinson & Holt to H. T. Watkins on the 17th of March, 1886, was made with the intent on the part of the former to delay, hinder or defraud their creditors or any one of them, the assignment was void, and this was so whether Watkins participated in or knew of such intent or not.

The main question, with respect to the assignment is, was it a *bona fide* transaction or was it a trick or contrivance of Robinson & Holt to defeat their creditors or any one of them?

If the latter was their purpose, then the assignment, as to creditors, was void, no matter whether Watkins knew of such purpose or not.

Robinson & Holt, being unable to pay all their indebtedness in full, had the right to prefer the creditors named in the deed of assignment made by them to Watkins, if by this assignment the appropriation of the property assigned was absolutely made with no reservation for their own benefit to the injury of creditors unprovided for. The intent of Robinson & Holt in executing the assignment is a substantive fact which the jury must find as such, and a material element in the assignment.

The fact that Robinson & Holt, in making the assignment, reserved to themselves their personal property exemptions allowed by the constitution and laws of the State, does not in any manner affect the validity of the deed, and is no evidence of a fraudulent intent or of a purpose to delay or hinder their creditors.

The provision of the deed for the benefit of Robinson & Holt and for the exemption of the assignee from liability is evidence of a fraudulent purpose on the part both of Robinson & Holt and of the assignee, without regard to the legal effect of such a provision in respect to the assignee's liability.

The plaintiff, Eigenbrun, if he knew of the deed of assign ment from Robinson & Holt to Watkins, had notice of such evidences of a fraudulent intent as were apparent on the face of the deed. Did he know of the deed of assignment, and did he refuse to take a bill of sale from Watkins unless Robinson & Holt would also relinquish their claim to the goods? Was the bill of sale made by Watkins and Robinson & Holt with the intent to hinder, delay and defraud the creditors of Robinson & Holt, and did plaintiff know of and participate in such purpose? If there was collusion between Watkins, Robinson & Holt and Eigenbrun, to hinder, delay or defraud the creditors of Robinson & Holt or any one of such creditors, the bill of sale will be void, even though founded upon a valuable consideration.

The plaintiff's counsel requested the Court to charge specially as follows:

1. That even though the jury should find that the deed of trust was fraudulent, yet if they find that the purchase by the plaintiff, Eigenbrun, from Robinson & Holt and the trustee, and their bill of sale to him was *bona fide* and for value, the plaintiff would be entitled to recover.

2. That if Eigenbrun paid for the property with his debt and those which he controlled, that would be a purchase for value.

The Court gave the first instructions, adding only in lieu of the words "for value" the words "a fair price."

The second instruction was given, adding at the end of it the words "provided those debts were a fair price for the goods."

The Court then said to the jury in connection with these special instructions, they should consider all the Court had previously said to them in regard to the assignment and whether or not Eigenbrun had notice of any fraudulent intent of Robinson & Holt in making the same, if any such intent shall be found.

The Court then called the attention of the jury to the evidence bearing upon the several points of the charge. Plaintiff excepted to the entire charge.

There was a verdict for the defendants.

The plaintiff moved for a rule for a new trial upon the following grounds:

1. Because on the trial of the cause the plaintiff's counsel were proceeding to develop their entire case and insisted on so doing, but his Honor, being of a different opinion, ordered that, in the interest of time, said attorneys should only prove the allegations of their complaint, and not introduce any evidence tending to rebut fraud till after the defendant had produced some proof of fraud other than the badges of fraud in the assignment, by which plaintiff's counsel understood they were to hold back said portion of evidence till defendant had introduced his evidence, but defendants introduced no evidence, and then plaintiff lost the evidence of his three most important witnesses.

2. That it being contended by defendant's attorney that witness Holt had stated that said plaintiff's debt alone had been accepted in full payment of the stock of goods conveyed in said bill of sale, one of the plaintiff's attorneys offered to show by the complaint in the case of *Frank & Aydlet* v. *Robinson & Holt,* (which case, it had been agreed, should abide the result in this), that said defendant's attorney had himself charged that said sale was made for the benefit of all three of the creditors preferred in the second class, to-wit: Eigenbrun, Wright and Jacob Cohen, but his Honor would not allow the pleading to be read.

3. Because his Honor, while giving the charge prayed for in reference to the bill of sale, nearly in the words asked for, added "it is proper for the jury to consider what he had said in reference to fraud in assignment, and as to whether said Eigenbrun had notice of said fraud," whereas he should have charged that the bill of sale was good, if for a valuable consideration, even if the jury should find that the assignment was made with the actual intent to defraud, and that Eigenbrun had notice of such fraud—as all the title the trustee did not have, was in Robinson & Holt, who joined in the bill of sale.

4. Because in the prayer for instructions asked for, his Honor substituted the words " for a fair consideration " for the words " for value."

The Court refused the motion for a new trial.

No request was made of the Court by counsel for the plaintiff for leave to introduce as witnesses either the plaintiff himself or Augustus Wright, or any other witness or evidence. The counsel for plaintiff in their argument to the jury, insisted that their evidence abundantly established the *bona fides*, both of the deed of trust and the bill of sale, while the counsel for the defendant contended that in addition to the evidences of fraud apparent upon the face of the deed of trust, the evidence of the witness Holt, and of the deputy sheriff Cole, conclusively established that the deed of trust and the bill of sale were fraudulent and void.

There was judgment for the defendants, and the plaintiff appealed.

*Messrs. E. C. Smith* and *H. T. Watkins,* for the plaintiff.
*Mr. T. M. Pittman,* for the defendants.

DAVIS, J., (after stating the ease).

1. The first instruction to the jury asked for by the plaintiff was given, with a substitution of the words "a fair price "

in lieu of the words "for value," and there was no error in this of which the plaintiff could complain. It was as favorable as he could ask. The evidence tended to show that the plaintiff knew that there were executions in the hands of the sheriff. In *Beals* v. *Guernsey*, 8 Johnson, 446, it is said : "The rule is, that the purchaser, knowing of the judgment, must purchase with the view and purpose to defeat the creditors' execution ; and if he does it with that purpose it is fraudulent, notwithstanding he may give a *full* price. The question of fraud depends upon the motive. The purchase must be *bona fide*, as well as upon good consideration. This was the rule as declared by Lord Mansfield upon repeated occasions."

The knowledge of the fact that the sheriff was seeking to subject the property to the satisfaction of executions in his hands would not, of itself, invalidate the purchase by the plaintiff, but if he purchased with a view to defeat the remedy of creditors in relation to the goods purchased, even though he gave "a fair price," the validity of the sale may well be questioned. *Wickham* v. *Miller*, 12 Johnson, 320; *Palmer* v. *Giles*, 5 Jones' Eq., 75.

2. The second instruction asked for was given with the addition, "provided those debts were a fair price for the goods."

What has just been said applies equally to this exception, and there was no error in the modification of the prayer.

We only refer to the plaintiff's exception to the "entire charge" of his Honor, (which is insufficient as an exception) to say that it was a plain, clear, fair and full exposition of the law as applicable to the evidence submitted to the jury, in which we can see no error.

As to the alleged grounds for a new trial:

1st. When the case of *Frank* v. *Robinson* was before this Court at the last term, (96 N. C., 28), referring to the provision in the deed in regard to the employment of the as-

signors at a compensation of $50 each per month, the Court said that it furnished "evidence of a fraudulent intent, proper, with other facts attending the transaction, to be submitted to a jury."

It devolved upon the defendants, who were attacking the deed, to show the "facts and attending circumstances," if any, to satisfy the jury that the deed was fraudulent, and the suggestion of his Honor "in the interest of time" and the clear intimation that the laboring oar was upon the defendants, could in no way prejudice the plaintiff; at all events there was no objection interposed, and if, upon the cross-examination of the witnesses for the plaintiff, the defendants were satisfied that the facts and circumstances elicited were sufficient to establish the negative of the issue, they were not obliged to introduce testimony, and it was the mistake of the plaintiff, for which the Court was in no wise responsible, if he "lost the evidence of his three most important witnesses." He had a right "to prove his case, in his own way, and by his own evidence," and the defendants had an equal right to prove their case, if they could, by plaintiffs witnesses, and the case of *Davenport* v. *McKee*, 94 N. C., 325, cited by counsel for plaintiff, has no application.

When upon the announcement of the plaintiff that he had closed his case, the defendants said they would introduce no testimony, if a request had been made by him for leave to introduce further testimony, it would, no doubt, have been granted, and he could have had the benefit of the important testimony which had been "held back," but no such request was made, and he seems to have been satisfied to go to the jury upon the testimony offered, and this presents no ground for a new trial.

2d. The complaint in the case of *Frank & Aydlet* v. *Robininson & Holt*, was not competent evidence, and was properly excluded.

3d. The ground for a new trial, based upon alleged error in his Honor's charge, has no foundation.

It was insisted on behalf of the trustee that the sale to the plaintiff should be sustained, because it was a disposition of the goods advantageous to the *cestui qui trusts*, and we are referred to Burrill on Assignments, 459. His Honor charged the jury that it was not necessary that the trustee should participate in or know the intent with which the deed was made, and his *bona fides* could not affect it. There is no error.

No error.                                        Affirmed.