## COX v. WALL.

### (Filed June 6, 1903.)

1. BANKRUPTCY—*Assignment for the Benefit of Creditors—Trusts—Creditors.*

    A trustee in bankruptcy is entitled to have a fraudulent conveyance set aside and to recover the property transferred provided any creditor of the bankrupt would be entitled to the same.

2. FRAUDLENT CONVEYANCES—*Assignments for the Benefit of Creditors—Burden of Proof—The Code, Secs. 1545, 1546, 1547—Onus Probandi—Notice.*

    The burden is on the purchaser of property conveyed to defraud creditors to show that he bought for a valuable consideration and without notice.

Douglas, J., dissenting.

Action by Walter O. Cox against Wall & Huske, heard by Judge *Thomas J. Shaw* and a jury, at December Term, 1902, of the Superior Court of Forsyth County. From a judgment for the defendants, the plaintiff appealed.

*Lindsay Patterson, L. M. Swink* and *A. H. Eller,* for the plaintiff.
*Glenn, Manly & Hendren, Watson, Buxton & Watson* and *E. E. Gray,* for the defendants.

Walker, J. This action was brought by the plaintiff, who was trustee in bankruptcy of W. H. Gilbert, to set aside a conveyance by Gilbert of a stock of merchandise, which the plaintiff alleges was made in violation of the provisions

of the bankrupt Act against fraudulent conveyances, and also in fraud of his creditors, and which is therefore condemned both by the bankrupt law and our statutes. The evidence in the case was voluminous and we will not attempt to set it out or review it in detail, as it will be quite sufficient for a decision of this appeal, in the. view we take of the case, to refer to one of the prayers for instruction which the plaintiff requested the court to give and which the court refused to give to the jury, and also to the charge of the court with reference to the subject matter of that prayer. The issues submitted to the jury and the answers thereto were as follows:

1. Was the conveyance of the stock of goods from W. H. Gilbert to Wall & Huske made with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them? Yes.

2. Was the sale of the goods to Wall & Huske by Gilbert made with the intent on the part of the said Gilbert to unlawfully prefer one or more of his creditors, as alleged in the complaint? No.

3. Did Wall & Huske purchase said stock of goods in good faith and for a present fair consideration? Yes.

4. Did the payment by Gilbert to Wall & Huske of the debt due by him to said Wall & Huske constitute an unlawful preference? No.

The plaintiff in apt time tendered an issue as follows: Did either of the defendants, J. D. Wall or D. W. Huske, have knowledge or notice of such fraudulent intent, on the part of the defendant Gilbert? The court refused to submit the issue and the plaintiff excepted.

At the close of the evidence, the defendants agreed that the jury should answer the first issue "Yes." With reference to the third issue submitted by the court, the plaintiff requested the court to charge the jury that, as the conveyance

was admitted to have been made by Gilbert with intent to hinder, delay and defraud his creditors, the burden was on the defendants to show not only that they purchased for value, but without notice of the said intent to defraud. The court not only refused to give this instruction, but on the contrary charged the jury that even if the conveyance was made with a fraudulent intent, yet if the jury found that the defendants paid a present fair consideration for the goods, the plaintiff must show by the preponderance of the evidence that the defendants were not purchasers in good faith, that is, that the defendants either participated in Gilbert's fraudulent or unlawful intent, or that they had notice thereof at the time of the purchase.

We will not stop to consider whether there is any essential or substantial difference between the third issue submitted by the court and the issue tendered by the plaintiffs in lieu thereof, that is, whether there is any difference in legal contemplation between a purchase without notice of the fraudulent intent of the debtor in conveying away his property, when a valuable consideration has been paid, and a purchase in good faith and for a present fair consideration. We shall treat the two issues as if they are in law substantially the same.

It is provided in the bankrupt Act, Sec. 67e, that fraudulent transfers of property made by an insolvent debtor at any time within four months prior to the filing of the petition against him which are null and void under the law of the State in which the property is situated, shall be void under said Act against his creditors, if he be adjudged a bankrupt, and shall pass to the trustee in bankruptcy, and all conveyances and transfers made within said time with intent to hinder, delay or defraud creditors shall likewise be void, except as to purchasers in good faith and for a present fair consideration, and all property so conveyed shall pass to his

trustee.   By Section 70a of the Act, it is provided that the trustee of the estate of a bankrupt shall be vested by operation of law with the title to "all property transferred by him in fraud of his creditors;" and by Section 70e it is provided that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred from the person to whom it was transferred "unless he be a *bona fide* holder for value prior to the date of the adjudication."

The plaintiff, therefore, is entitled to have the conveyance set aside and to recover the property transferred by Gilbert with an intent admittedly fraudulent, provided any creditor of Gilbert would be entitled to the same relief.

The provisions of the statute of 13th Elizabeth, with some modifications, have been enacted into law in this State and will be found in The Code, Sec. 1545.   By that section, all conveyances made with intent to hinder, delay or defraud creditors are declared to be utterly void and of no effect; then follows Section 1546, which contains substantially the provision of 27 Elizabeth against conveyances made with intent to defraud purchasers.   By Section 1547, voluntary conveyances are protected when the donor retains property sufficient and available for the satisfaction of his existing debts, but the indebtedness of the donor is declared to be evidence from which an intent to defraud may be inferred. These sections are followed by Section 1548, by which it is provided as follows: "Nothing contained in the preceding sections shall be construed to impeach or make void any conveyance, interest, limitation of use or uses, of or in any lands or tenements, goods or chattels, *bona fide* made, upon and for good consideration, to any person not having notice of such fraud."

We have recited these different provisions of the law in regard to fraudulent conveyances with the view of showing

the order of their enactment and the purpose of the Legislature that Section 1548 should constitute an independent provision, operating as a proviso to the other sections, and further for the purpose of showing that the matters therein stated were intended to be strictly of a defensive character, and are required to be averred and proved by the party who relies on their existence in order to validate a conveyance which the law has declared to be void, because made with a fraudulent intent. The rule is of general application that matter contained in a proviso, or constituting an exception to something which precedes, must be pleaded and proved by him who would take advantage of it. *Wadsworth v. Stewart,* 97 N. C., 116; *Gorman v. Bellamy,* 82 N. C., 496. When a deed is made with a fraudulent intent the law condemns it and pronounces it void and it remains void, of course, until it is shown for some reason to be valid. Nothing else appearing, it is void, and he who claims under it must aver and prove whatever is necessary to sustain its validity. The burden is on the purchaser therefore to show under the statute, that he purchased not only for value, but without notice.

It is said that the burden of proof by the decisions in some other jurisdictions, does not rest on the purchaser to show anything, save that he paid a fair price, and that this being shown the burden is shifted and the plaintiff must show a want of notice. We will not undertake to examine the decisions of other States, for it seems to us that it would be vain and useless to do so, as the question must be decided by the law as contained in our statutes and as declared in the decisions of this court.

It is also suggested that the rule requiring the plaintiff to take the burden of proving notice, when the purchaser or defendant has shown that a fair consideration was paid for the property, has been laid down by this court in *Peeler v.*

*Peeler,* 109 N. C., 628, and that there is no authority here
to the contrary.   We do not think that the question was pre-
sented in the case of *Peeler v. Peeler.*   That case involved
the validity of a conveyance made by a husband to his wife
and the court held that from the relation of the parties the
law raised a presumption of fraud without any proof of fraud
by the plaintiff, and that the burden was upon the wife to
show that she paid value for the property conveyed to her
by her husband, and when she had done this the burden
shifted to the plaintiff—not to show that she purchased with
notice, but to show that her husband had an actual intent to
defraud.   There was not an exception in the case that re-
lated to the burden of proof, nor does the court refer to it in
its opinion.   It appears from the charge to the jury, which
is set out on page 629, that the burden was placed upon the
defendant and the judgment of the court below was affirmed.
The case is not in point and we think that there are authori-
ties in this State which state the rule, under our statute to
be that the burden is upon the purchaser to prove not only
a valuable consideration, but want of notice.   In *Young v.
Lathrop,* 67 N. C., 63; 12 Am. Rep., 603, the court held
that Section 1548 was a proviso to the preceding sections of
the Chapter, and Pearson, C. J., in referring to it, uses this
language:   "The proviso can only be made operative by
giving to it the scope and effect of purging the original con-
veyance of the fraud with which it was tainted, by allowing
the *bona fides* and the full valuable consideration of the
second conveyance to supply the want of these qualities to
the first, so as to perfect the title to the *bona fide* purchaser,
by carrying it back to the donor and claiming the title from
him and thus prevent the title of the first purchaser from
being 'impeached and made void,' " p. 72.   This shows that
the court was of the opinion that by Section 1548 the pur-
chaser is required to aver and prove affirmatively that he

comes within the terms of Section 1548 in order to take his case out of the operation of the preceding sections. Why should this not be so? It is conceded that he must show that he bought for value; but the statute provides not only that he must have bought for value, but also without notice, and makes both a valuable consideration and want of notice essential to the validity of his title. If, therefore, he is required to prove one of the essential elements of a good title, as against the creditor who has shown that the deed was void because it was fraudulent, why not the other? It will not do to say that the law will not impute wrong or evil to any one and will not therefore presume that his purchase was not *bona fide* in the absence of proof to the contrary, because this would contravene the express provision of the statute which declares that the deed shall be utterly void and of no effect unless it appears that the title had been acquired by a *bona fide* purchaser for value and without notice of the fraud. In the original statute of 13 Elizabeth and in our Act of 1715, what is now Section 1548 of The Code, was a proviso to the preceding sections of those statutes in regard to fraudulent conveyances. In *Eigenbrun v. Smith,* 98 N. C., 215, this court says: "The rule is that the purchaser, knowing of the judgment, must purchase with the view and purpose to defeat the creditor's execution; and if he does it with that purpose it is fraudulent, notwithstanding he may give a *full* price. The question of fraud depends upon the motive. The purchase must be *bona fide* as well as upon good consideration. This was the rule as declared by Lord Mansfield upon repeated occasions."

In *Tredwell v. Graham,* 88 N. C., 214, this court through Ruffin, J., says: "As said by Pearson, C. J., in *Cansler v. Cobb,* 77 N. C., 30, when a grantor executes a deed with intent to defraud his creditors, the grantee can only protect his title by showing that he is a purchaser for a valuable con-

sideration and without notice of the fraudulent intent on the part of his grantor."

In *Davis v. Council,* 92 N. C., 730, it is said by the court through Smith, C. J.: "The proposition itself is an imperfect statement of the principle of law, as it omits the material qualification, that such purchaser should not have had notice of the fraudulent character of the title of the party from whom he derives his,"—citing The Code, Sec. 1548. In *Odom v. Riddick,* 104 N. C., 521; 7 L. R. A., 118; 17 Am. St. Rep., 686, it is said that "A purchaser for value from one whose deed is declared by the jury to be fraudulent and void gets a good title if he has no notice of the fraud in his vendor's deed."

Bigelow, referring to this subject, says: "But it may still be thought necessary to inquire whether the plaintiff himself has really sustained the burden of proof, so as to require the defendant to come to the support of his defense, by merely showing fraud. It may be asked if the plaintiff ought not to go further and, though he has made a case of fraud in the grantor, offer some definite evidence of notice, or what for the present purpose is the same thing, that the conveyance to the defendant was voluntary. The answer of the authorities, though not without here and there a discordant note, is that evidence of the fraud is enough, and this whether the case be one of fraud on creditors, or fraud on a vendor; such is the better answer in those States in which in cases of fraud upon creditors, notice to the purchaser is sufficient to defeat his title." 1 Big. Fraud, p. 131.

But we think the question is directly passed upon and settled in two cases by this court: In *Saunders v. Lee,* 101 N. C., 7, the court says: "In *McGahee v. Sneed,* 21 N. C., 333, it is held that when a purchaser from a fraudulent grantee seeks relief on the ground that he is an innocent purchaser without notice, he must deny notice, and so he must in an answer

when he sets up the same defense to the bill of an impeaching creditor," and Gaston, J., delivering the opinion, after thus stating the rule, adds: "The want of notice is an essential part of his equity in the one case and of his defense in the other, and it is a general rule in pleading that whatever is essential to the right of the party must be averred by him."

It would appear from these cases that whatever must exist in order to protect the title must be averred and proved by him who holds that title. The burden is with him. But not so when it is sought to convert one into a trustee because he bought with notice. In the former case, the title is deemed to be bad until it is shown to be good; in the latter case the title is presumed to be good until it is shown to be bad by him who would assail it.

In *Wade v. Saunders,* 70 N. C., 275, Pearson, C. J., for the court, says: "The finding of the jury 'that the deed executed by Aaron Saunders to his son Jesse Saunders was not *bona fide,* but was fraudulent and done with purpose to defraud his creditors,' disposes of the other points made in the case on the part of the defendants; for how can Romulus F. Saunders, who claims under Jesse, the fradulent donee, stand upon fairer ground than he does, except as a purchaser for valuable consideration and without notice of the fraud attempted to be done by the said Jesse and his father, the defendant Aaron? There was no evidence of his being an *innocent purchaser.*" In the same case (plaintiff's appeal), p. 279, Pearson, C. J., for the court, says: "We have not been able to see the force of his Honor's reasoning in regard to the legal effect of the two deeds of Jesse to Romulus Saunders, or how the legal effect of the deeds could be at all affected by the fact that the 'existence of this *prima facie* title had been brought to the notice of the court by the plaintiffs themselves.' Had the plaintiffs demanded judgment that these two deeds be cancelled in order to remove a cloud from the

title, then Romulus F. Saunders would have been a necessary party, and although the deed from Aaron to Jesse was deemed void, still Romulus would be allowed to protect his title by showing that he was a *bona fide* purchaser for valuable consideration, without notice of the fraud that vitiates the deed to Jesse, but the *onus probandi* would have been on him, and *prima facie* his title would be affected by the same infirmity."

The plea that the defendant is a purchaser for value and without notice is in the nature of a plea of confession and avoidance, and the matter in avoidance is to be proved by the party pleading it. If it be said that the purchaser in that case will be required to prove a negative, the answer is that, though somewhat negative in form, it is an affirmative plea in substance, and besides it is peculiarly within the purchaser's knowledge whether he had notice or not of the fraud, and he can now testify in his own behalf. We think this view of the case is sustained by authority. In *Boone v. Childs,* 10 Peters, 210, it is said: "But still this will not be done on mere averment or allegation; the protection of such *bona fide* purchaser is necessary only when the plaintiff has a prior equity, which can be barred or avoided only by the union of the legal title with an equity, arising from the payment of the money, and receiving the conveyance without notice, and a clear conscience. It is setting up matter not in the bill; a new case is presented, not responsive to the bill, but one founded on a right and title operating, if made out, to bar and avoid the plaintiff's equity, which must otherwise prevail. The answer setting it up is no evidence against the plaintiff, who is not bound to contradict or rebut it. It must be established affirmatively by the defendant, independently of his oath. . . . . Such is the case which must be stated to give a defendant the benefit of an answer or plea of an innocent purchase without notice; the case stated must be made out, evidence will not be permitted to be given of

any other matter not set out." In *Jewett v. May,* 7 Johns., Ch. 65 ; 11 Am. Dec., 401, the court lays down the following rule : "To support the plea of a *bona fide* purchaser without notice, the defendant must aver and prove, not only that he had no notice of the plaintiff's rights before his purchase, but that he had *actually paid the money* before such notice." In *Weber v. Rothchild,* 15 Oregon, 390 ; 3 Am. St. Rep., 162, it is said : "Here the defendant Rothchild has alleged facts in one part of his answer tending to show that he is a *bona fide* purchaser for value without notice of this property, but he has offered no evidence whatever on those issues. The plea of a *bona fide* purchaser for value, as here alleged, is an affirmative defense interposed by the defendant, and in this connection it is not perceived that it differs from other affirmative defenses. The party having the affirmative of the issue must offer evidence to support it. Another rule of law equally elementary which is frequently applied in such cases, is that when a fact is peculiarly within the knowledge of a party, he must furnish the necessary evidence of such fact." The case just cited quotes with approval *Tredwell v. Graham,* 88 N. C., 208. In *Young v. Schofield,* 132 Mo., 663, it is said : "Inasmuch as the averment or defense of being 'an innocent purchaser' is an *affirmative* allegation or plea, so must the evidence offered in its support be of the like nature; as the allegation must be *affirmatively pleaded,* so also must it *affirmatively be proved;* the *onus* lies on the pleader." In *Edwards v. Railroad,* 82 Mo. App., 101, the court says : "A question is made here as to where the burden of proof was on the question of the plaintiff's being an innocent purchaser without notice of the prior unrecorded deed. Ordinarily, the burden would be on the party whose case depends on his innocence and lack of notice. Here the plaintiff's claim of title being by a subsequent deed is invalid, unless he can establish that he was an innocent purchaser."

We do not cite these authorities as controlling upon us in the interpretation of our statute, but as stating and applying the general rule in regard to pleading and proof that he who would avail himself of a fact which is necessary to protect his right or title must aver and prove the fact.

The solution of this question depends somewhat upon the phraseology of the statute against fraudulent conveyances, and the decisions of the courts of other States and any rule which may be supposed to have prevailed at common law can not be safely followed, as our statute is not in all respects like the statutes of other States or in strict accordance with the common law principle. The rules of evidence, including the burden of proof, to be applied in the trial of a case are a part of the law of the remedy and will be supplied by the *lex fori,* especially when the cause of action is founded upon a local statute. We must follow our own decisions upon the subject.

In the case of *Jones v. Simpson,* 116 U. S., 615, to which we have been referred, the court followed, as it was bound to do, the decisions of the Supreme Court of Kansas in construing the statute of that State, which by its very terms implied that the burden of proof should rest upon the creditor or the party attacking the conveyance. The court was not called upon to state the rule as to the burden of proof, except as it had been settled by the courts of that State in construing its statutes. In *Bamburger v. Schoolfield,* 160 U. S., 149, what is said by the court with reference to the burden of proof does not relate to the notice of the fraud, but to the fraud itself, and of course the burden to establish the latter was placed upon the contesting creditor. In *Reiger v. Davis,* 67 N. C., 185; *Lassiter v. Davis,* 64 N. C., 498, and the class of cases of which they are the leading representatives, the question as to the burden of proof was not involved. The court decides in those cases merely that the fraudulent con-

veyance is void unless it appears that the vendee was not a party to the fraud, or purchased without any notice of the fraudulent intent. *Devries v. Phillips,* 63 N. C., 53.

There was error in placing the burden of proof as to notice upon the plaintiff, for which a new trial is awarded.

New Trial.

Douglas, J., dissenting. From reason and authority it seems to me that the learned judge below was right in saying that when the purchaser has shown that he has paid a fair price for the goods, the burden then shifts back to the plaintiff to show that the purchaser had knowledge of the fraudulent intent of the vendor. The mere fact that a fair price is paid is in itself the strongest evidence of good faith. It may be said that the vendee knows whether or not he knew of the vendor's fraudulent intent, and that he can disprove suck knowledge hy his own testimony. This is the only way such a negative can be proved; but is it any easier for the vendee to prove his want of knowledge than for the plaintiff to prove his knowledge. That the vendee had knowledge might be proved by one witness, but a thousand witnesses could not prove that he had no knowledge. All that they could prove would be that they did not give him any information to put him on notice and that he had no knowledge *as far as they knew.*

Suppose the vendee should die, ought the widow and orphan child to be deprived of the property, the full value of which had been honestly paid, on the unsupported admission of a self-confessed swindler that he had sold the property with the intent to thereafter fraudulently misapply the proceeds? Who could swear of his own knowledge that the deceased vendee had no knowledge of such intent? Do we not effectually deprive a man of his right when we deprive him of all opportunity of asserting that right? It may be

said again that "hard cases are the quicksands of the law", but that celebrated expression of Chief Justice Pearson is no authority for creating quicksands. The few remaining hours of the term give me no time for the examination and citation of authorities, and so I must content myself with a single statement of my personal views.